United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 16, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————————

No. 02-41543

————————————

WILLIE EARL PONDEXTER, JR,

Petitioner-Appellee,

v.

DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant.

————————————————————————————

Appeal from the United States District Court for the
Eastern District of Texas

————————————————————————————

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Petitioner Willie Earl Pondexter, Jr., (Pondexter) was convicted of capital murder in Texas

and sentenced to death. After exhausting his remedies in state court, Pondexter filed a petition for

federal habeas corpus in district court. In an unpublished opinion, the district court granted relief

with respect to the claim that trial counsel rendered ineffective assistance by failing to consult with

and offer the testimony of a pathologist during the guilt-innocence phase of trial. The Director

appeals from this judgment. Concluding that the district court failed to afford proper deference to the state court's decision, we hold that the state court did not unreasonably apply clearly established federal law and vacate the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

I.     BACKGROUND[1]

On the night of October 28, 1993, Ricky Bell, James Bell, Deon Williams, and Pondexter met at an apartment and discussed robbing "an old lady." Following this discussion, the group walked to a corner store, and then to Martha Lennox's house where they checked to see what kind of car she owned. The group then walked to a trailer park, and then to a friend's house. Once there, they met with James Henderson.[2] Pondexter borrowed a car and all five drove to Annona to buy beer and go to a club. During the drive to and from Annona, the five talked about robbing "the old lady," and about "crips and bloods and stuff." Specifically, they discussed which crip "had the heart" to do what they were planning to do to "the old lady." On the way to the victim's house, the group stopped at a store where they talked about which crip had the heart to knock out a man who happened to be getting gas. Although Williams and Henderson did get out of the car, no harm was actually done to the man. The group drove to the victim's house, but parked the car a few blocks away. On their first attempt to enter the house, they were scared away by the sight of a patrolling police car. Four of the five ran back to the car, but James Bell ran in another direction and was not seen by the rest of the

---

[1] The facts of the offense are taken in large part verbatim from the opinion of the Texas Court of Criminal Appeals on Pondexter's direct appeal. *Pondexter v. State,* 942 S.W.2d 577, 579-80 (Tex.Crim.App. 1996).

[2] Henderson was tried separately prior to Pondexter's trial and convicted of the capital murder of Martha Lennox and sentenced to death.

2

group again that night.  Pondexter, Henderson, Williams, and Ricky Bell went back to the victim's house where Pondexter kicked in the front door.  All four proceeded up the stairs and into the bedroom where the victim was sitting on her bed.

Once all four were in the bedroom, Williams took the seven dollars that was in the victim's coin purse.  Immediately thereafter, Henderson shot the victim in the head and handed the gun to Pondexter.  Pondexter also shot the victim in the head, stating "that's how you smoke a bitch."  The four drove to Dallas and were arrested in the victim's car.

During the guilt-innocence phase of trial, Dr. Guileyardo, the Chief Medical Examiner for Dallas County, testified that he performed the autopsy on the victim.  He testified that she had been shot twice and that the cause of death was "gunshot wounds to the head."  One bullet entered "through the [left] side of her skull, it went into her mouth, it went through her tongue, it went down and struck her jawbone on the right side and shattered that jawbone on the right side and then the bullet came out beneath her right ear. . . ."  Another bullet  entered through the forehead and "went all the way through the brain and came out the back of her head."  Although Dr. Guileyardo could not determine the order of the gunshots, he concluded that the one that shattered her jawbone was fired from a closer range than the other shot.  He opined that "[b]oth of these [wounds] are killing wounds.  Both could be fatal wounds.  Either one of these [wounds] could have killed her."  When asked whether it could be determined if Martha Lennox was dead at the time either wound was inflicted, Dr. Guileyardo testified that the gunpowder stippling marks on both gunshot wounds were red and had the appearance of inflammation, indicating a vital reaction, not a postmortem reaction.  A vital reaction occurs when the skin is injured, and the wound is red because of the blood flowing through the skin.  Dr. Guileyardo further testified that if a dead person's skin is injured, the wound

3

is "sort of a yellow, dry appearance, because there is no blood flow going through the skin." Thus, based on the appearance of the wounds, Dr. Guileyardo believed that the victim was alive at the time of each gunshot. On cross-examination, Dr. Guileyardo admitted that it was possible to survive the face wound and that his autopsy report did not report any hemorrhaging from the wound caused by the bullet that entered her face.

During closing argument at the guilt-innocence phase, Pondexter's counsel first argued that Williams, the accomplice who testified that Pondexter fired the second shot into the victim, was not credible. Instead, counsel argued that Rhoda Briley's testimony that Pondexter participated in the burglary/robbery but did not shoot the victim was more credible. Counsel argued that Williams was biased because he was a convicted felon who had participated in this crime and received a deal for his testimony. Unlike Williams, Briley was not charged with the instant crime. In the alternative, defense counsel argued that if the jury believed Williams's testimony, the jury should find that the victim had instantly died from the first shot and thus Pondexter's shot did not kill her, absolving him of any responsibility for her death.[3]

The jury found Pondexter guilty of capital murder. Tex. Penal Code § 19.03. After the punishment phase of the trial, the jury affirmatively answered the special issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure, and the trial court sentenced Pondexter to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence. *Pondexter v. State,* 942 S.W.2d 577 (Tex.Crim.App. 1996)*, cert. denied,* 522 U.S. 825, 118 S.Ct. 85 (1997).

Pondexter filed a state habeas petition challenging his conviction and death sentence. After

---

[3] Inexplicably, the jury was not instructed with respect to the Texas law of parties, although, it appears such an instruction would have been available to the State.

4

conducting an evidentiary hearing, the state trial court entered findings of fact and conclusions of law recommending that relief be denied. The Court of Criminal Appeals adopted the findings of fact and conclusions of law and denied relief. *Ex parte Pondexter,* No. 39,706-01 (Tex.Crim.App. Jan. 27, 1999). Thereafter, Pondexter filed the instant federal habeas petition raising twenty claims. The district court granted relief concluding that trial counsel's failure to consult with and offer the testimony of a pathologist deprived Pondexter of the effective assistance of counsel.[4] The Director now appeals.

II.    STANDARD OF REVIEW

Pursuant to the federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), we defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519-20 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable. *Id.* at 1521. Additionally, pursuant to section 2254(e)(1), state court findings of fact are presumed to be correct, and the petitioner has the

---

[4] Because the District Court granted habeas relief on Pondexter's first claim, it did not address Pondexter's remaining claims and dismissed them as moot.

5

burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez v. Cockrell,* 274 F.3d 941, 947 (5th Cir. 2001).

### III.    EFFECTIVE ASSISTANCE OF COUNSEL

The only issue before us is whether the district court erred in granting federal habeas relief based upon Pondexter's claim of ineffective assistance of counsel. The Supreme Court has recently reaffirmed the familiar two-prong test for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*(Terry ) Williams v. Taylor,* 120 S.Ct. 1495, 1511 (2000) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984)). To demonstrate that counsel was ineffective, a petitioner must establish that counsel's representation fell below an objective standard of reasonableness. *See id.* To show prejudice, he must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See id.* at 1511-12.

Here, the district court held that trial counsel rendered ineffective assistance based upon the failure to call a pathologist to testify during the guilt-innocence phase of trial in support of Pondexter's alternative defensive theory.[5] Pondexter's alternative theory of defense at trial was that, because the first gunshot fired by codefendant James Henderson into the victim's brain would have instantly killed her, the shot he fired seconds later into her face was not culpably lethal.[6] More

_____

[5]  Pondexter's primary defensive theory was that although he participated in the burglary/robbery, he did not shoot Martha Lennox.

[6]  On appeal before us, Pondexter argues that the record does not establish the amount of time that elapsed between the two gunshots. It could have been minutes, according to Pondexter.

6

specifically, Pondexter now argues that the district court properly granted habeas relief based on his claim that had counsel called a pathologist to testify that the victim was dead at the time he shot her, there is a reasonable probability that the jury would not have found him guilty of killing the victim. In support of his theory, he relies upon the testimony of Dr. Stephen Bolesta, a pathologist he called to testify as an expert witness at the state habeas evidentiary hearing.

The Director contends that the district court's judgment does not accord the state court's decision the substantial deference mandated by AEDPA. The Director argues that the district court erred in rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses, *i.e.,* the two pathologists, Dr. Guileyardo, the pathologist who performed the autopsy on the victim and testified at trial, and Dr. Bolesta, the pathologist who testified as Pondexter's expert witness during the state habeas evidentiary hearing. Thus, the Director asserts the district court erred in concluding that trial counsel performed deficiently and that such deficient performance resulted in the required prejudice.

We agree that the district court failed to afford the factual findings of the state court proper deference. Because we conclude that Pondexter failed to show he was prejudiced by counsel's failure to call a pathologist, we do not address the deficiency prong of *Strickland.* Assuming *arguendo* that the state court's conclusion is erroneous, we are convinced that the district court erred in finding unreasonable the state court's conclusion that counsel did not render ineffective assistance with respect to this particular claim.

---

Although in his trial testimony Williams does not estimate the time that elapsed between shots, the description he provided of the murder indicates that Pondexter fired within seconds of Henderson. There is no basis to infer that minutes elapsed between the shots. Moreover, the district court stated in its opinion that it was *undisputed* that the shot to the face was within a few seconds of the shot to the brain.

7

We begin by explaining that Pondexter's claim of ineffective assistance of counsel involves only the *alternative* theory of defense, not the primary defensive theory.[7] Pondexter's primary defensive theory was that although he participated in the burglary/robbery and was present during the murder, he did not shoot the victim. Instead, his codefendant James Henderson fired both shots. Thus, he argued that the jury should not finding him guilty of murder, only of the lesser offense. Although codefendant Deon Williams testified that Pondexter fired the second shot, there was evidence to support Pondexter's primary defensive theory that Henderson fired both shots into the victim. Rhoda Briley, Pondexter's girlfriend at the time of the offense, testified that after the murder Pondexter admitted to her that he had stolen from the victim but he did not shoot the victim. Indeed, defense counsel argued to the jury that "by far and away the more credible story . . . was told by Rhoda Briley that [Pondexter] didn't shoot anyone." The undisputed evidence was that Pondexter handed the murder weapon to James Henderson as they entered the victim's home (prior to the first shot), and the weapon was seized by the police from Henderson when he was arrested the next morning in Dallas, giving counsel a basis for arguing that Henderson, not Pondexter, possessed the weapon for the entire relevant time period. Additionally, during closing argument, defense counsel emphasized to the jury that Pondexter's fingerprints were not found on the murder weapon.

We now turn to the district court's opinion. The district court concluded its analysis by opining that: "Dr. Bolesta was a qualified expert, and his opinion that Ms. Lennox died instantaneously from the wound through her brain appears just as plausible on its face as Dr.

---

[7] Contrary to Pondexter's argument, counsel did not build his "entire case around" the alternative defensive theory that the victim was deceased when he fired the shot. As set forth in the text of the opinion, the instant claim of ineffective assistance of counsel does not involve his primary defense theory that he fired no shots.

8

Guileyardo's opinion that the brain wound, while fatal, was not instantaneously so."[8] The district court then opined that the state court correctly denied Pondexter's actual innocence claim, but "did not directly address the issue of the relative plausibility of the contrary expert opinions." The district court further opined that the state court did not issue any findings of fact that "establish that one expert's opinion was more or less plausible than the other's. Accordingly, the Court concludes that it was unreasonable for the State court to find that there was not a reasonable probability that at least one juror would have voted 'not guilty' had Dr. Bolesta testified."

In other words, the district court's opinion is based upon the following analysis: the state court's failure to make certain, explicit findings of fact rendered unreasonable the state court's conclusion that Pondexter had failed to demonstrate that, had counsel presented Dr. Bolesta's testimony during trial, there is a reasonable probability of a different outcome. As set forth below, we believe that the state court's factual findings with respect to the experts' opinions are sufficient to sustain the state court's conclusion. Here, the bottom line is that the state court's denial of relief indicated that presentation of Dr. Bolesta's testimony would not have resulted in a reasonable probability of a different outcome. Even assuming that the state court failed to express certain factual findings that necessarily underlie its conclusion that Pondexter failed to demonstrate prejudice, a presumption of correctness would apply "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez,* 274 F.3d at 948 n. 11. Additionally, although the district court initially set forth the correct prejudice query, the district court also stated that to demonstrate *Strickland* prejudice, Pondexter "only [has] to establish that Dr. Bolesta's and

_____

[8] Clearly, in light of state court findings of fact which are set forth below, this "plausibility" finding was not within the district court's province to make, even prior to AEDPA.

9

Dr. Guileyardo's opinions about the cause of Ms. Lennox's death were more or less equally plausible." Of course, to satisfy the prejudice prong Pondexter had to demonstrate that, had counsel presented Dr. Bolesta's testimony during trial, there is a reasonable probability of a different outcome. We have explained that a reasonable probability "means a probability sufficient to undermine confidence in the outcome." *Neal,* 286 F.3d at 241. Assuming *arguendo* the district court's interpretation or phrasing of the *Strickland* prejudice standard is correct, we are convinced that the district court failed to properly defer to the state court's findings of fact in making its prejudice determination.

As this Court has explained, "[i]t seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). "[W]e conclude that our focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence. The latter approach appears unduly formalistic considering that the federal habeas court has the full record before it and is competent to determine whether *Strickland* has been unreasonably applied to the case before it." *Id.*

Here, as in *Neal,* "[t]he precise question, then, is whether the [state] court's ultimate conclusion--that there was no prejudice and, consequently, no ineffective assistance of counsel under the Strickland test--is objectively unreasonable." *Neal v. Puckett,* 286 F.3d at 246. "The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001).

As set forth previously, pursuant to section 2254(e)(1), state court findings of fact are

10

presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez,* 274 F.3d at 947. The district court expressly recognized this standard of review.[9] However, as discussed below, the district court's parsing of the state habeas court's findings does not conform to the spirit or the letter of AEDPA's deferential standards.

The state habeas court expressly made a factual finding that Pondexter's expert witness, Dr. Bolesta, was less credible than the state's medical examiner who testified at trial, Dr. Guileyardo. State court finding of fact number 18 provides as follows: "Based on [Dr.] Bolesta's affidavit and in-court testimony, the court finds that the testimony of Dr. E. Stephen Bolesta is less *credible* than the in-court testimony of Dr. Guileyardo." (emphasis added). The district court expressly recognized that this finding is a credibility determination. Nonetheless, the district court, assuming *arguendo* that the credibility determination was fairly supported by the record, opined that the finding "does not

---

[9] After setting forth this standard of review, the district court, citing *Marshall v. Lonberger,* 459 U.S. 422, 432 (1983), stated that "[f]acts are rebutted by clear and convincing evidence if they lack even fair support in the record." Op. at 14. *Lonberger* addressed an exception to the presumption of correctness afforded state factual findings in the pre-AEDPA federal habeas statute, 28 U.S.C. § 2254(d)(8). Pursuant to then-effective § 2254(d)(8), an exception to the presumption of correctness existed when a state court's factual determination was not fairly supported by the record. This Court has indicated that AEDPA requires "increased deference to state court factfindings." *Graham v. Johnson,* 168 F.3d 762, 784 n. 16 (5th Cir. 1999); *accord Gachot v. Stalder,* 298 F.3d 414, 418 (5th Cir. 2002) ("AEDPA only strengthens the stricture imposing a strong requirement of deference for a state court's findings of fact."). Likewise, the Eleventh Circuit has noted that, after AEDPA, the federal habeas statute "not only retains the presumption of correctness but also adds that the petitioner has 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Fugate v. Head,* 261 F.3d 1206, 1215 n. 11 (11th Cir. 2001) (quoting § 2254(e)(1)). In sum, it is not clear to us that simply determining whether the state court's finding is fairly supported by the record is sufficient to overcome the presumption of correctness afforded by AEDPA. Nonetheless, because we are persuaded that the district court erred in not affording proper deference to the factual findings under either formulation, we need not determine whether the district court's formulation was a proper interpretation of AEDPA.

11

by itself establish that Dr. Bolesta's and Dr. Guileyardo's opinions as to the cause of Ms. Lennox's death are more or less equally *plausible*." Op. at 30 (emphasis added). The district court clearly did not perceive the words "plausible" and "credible" to be synonyms. However, in the context of determining whether a state court's finding should be presumed correct under AEDPA, this Court apparently used the terms plausible and credible as synonyms. *See Ladd v. Cockrell,* 311 F.3d 349, 356 (5th Cir. 2002). Also, Merriam-Webster's online thesaurus lists the words credible and plausible as synonyms.[10] In any event, although we recognize that the two words do not have identical definitions, in light of the deference to be afforded the state court's finding with respect to the credibility of the expert witnesses and the lack of evidence to rebut the instant finding, we do not believe the district court afforded proper weight to it in making the prejudice determination.[11]

State court finding of fact number 20 provides that:

Even assuming Dr. Bolesta's hypothesis as to the order (and persons who fired) the shots is correct, Dr. Bolesta admitted that the victim "could have" or "might have" been alive at the time the second shot was fired. Dr. Bolesta agreed that the victim's heart could have still been beating when the second shot was fired and that no doctor would have declared her dead when her heart was still beating.

The district court recognized that this finding "is fairly supported by the record" but opined that it

---

[10] http://www.m-w.com

[11] In his brief, the Director admits that the state court was not necessarily responsible for resolving the dispute between the experts. As this Court has explained, in addressing the prejudice prong of a claim of ineffective assistance based on counsel's failure to present expert testimony at trial, it is the court's task "to see what evidence might have been adduced and to gauge any prejudice resulting from trial counsel's failure to present it. [Nonetheless,] [t]he rejection of the evidence is relevant because it casts doubt on its persuasiveness and hence its force before the jury." *Belyeu v. Scott,* 67 F.3d 535, 542 (5th Cir. 1995). In *Belyeu,* we were referring to the task of the federal district court. Here, we are addressing the task of the state habeas court. Nevertheless, because both courts are conducting the same analysis, the reasoning in *Belyeu* appears applicable to the instant case.

12

only demonstrated that Dr. Bolesta did not find Dr. Guileyardo's testimony "implausible." According to the district court, this finding did "not establish Dr. Guileyardo's and Dr. Bolesta's opinions as to the cause of Ms. Lennox's death are not more or less equally plausible." Although the district court did not accord much, if any, weight to this finding, Dr. Bolesta's admission that it is possible that the victim was alive at the time of Pondexter's shot certainly has relevance to the prejudice inquiry in that it weighs in favor of finding no prejudice.

State court finding of fact number 21 provides as follows:

[T]he court finds that Dr. Bolesta's definition of the "peri-mortem" state, and [his testimony] as to the presence or absence of red "stippling" or powder tattooing, still does not prove that the victim was dead at the time of the second shot. The court believes that Dr. Guileyardo's explanation, based upon studies conducted by Dr. Vincent DeMaio, that powder tattooing is an antemortem (prior to death) phenomenon, is correct. Dr. Bolesta cited no study or authoritative treatise, other than his own theory that red stipple marks could be caused by powder residue striking the skin of a dead person.

With respect to this State court finding, the district court acknowledged that the fact that Dr. Guileyardo's premise, unlike Dr. Bolesta's premise, was supported by a treatise "is a valid grounds [sic] for finding Dr. Guileyardo's opinion as to the cause of Ms. Lennox's death more credible than Dr. Bolesta's opinion." The district court further stated that all of finding of fact number 21 was supported by the record except the statement that Dr. Bolesta cited no study or authoritative treatise other than his own theory with respect to the red stipple marks. The district court believed that Dr. Bolesta's testimony that another pathologist, Dr. Charles Hirsch, "was of the same line" as his opinion qualified as other scientific authority. Op. at 34. We are not of the view that Dr. Bolesta's hearsay testimony regarding another pathologist's opinion rebutted with clear and convincing evidence the state court's finding that Bolesta cited no study or authoritative treatise in support of his own theory.

13

State court finding of fact number 22 reads as follows:

The court further finds that Dr. Guileyardo's explanation as to the absence of blood in the victim's lungs due to the swelling of the victim's tongue, the swelling of the victim's mouth and the loss of control of the victim's mandible caused by its fragmentation, is persuasive evidence that the second shot (assuming that the second shot which struck the victim was through the jaw and tongue) contributed to the death of the victim. The court believes that the shot to the jaw virtually eliminated any chance of survival that the victim might have had.

The district court found that the last sentence was not "fairly supported" by the record because "[b]oth Dr. Guileyardo and Dr. Bolesta testified that Ms. Lennox had absolutely no chance whatsoever of surviving the brain wound." After reading the record, it is unclear whether Dr. Guileyardo unequivocally testified that the victim had no chance of surviving the brain wound. Dr. Guileyardo did testify at trial that the brain wound "is *usually* a fatal wound, but we don't know when it's going to be fatal." (emphasis added). Dr. Guileyardo further testified that it can be fatal "almost instantaneously" or "on the other hand, we see people who survive days with this type of wound." Indeed, when defense counsel specifically asked Dr. Guileyardo whether he had any doubt that the brain wound would have caused the victim's death, Dr. Guileyardo did not answer that question but responded that both wounds had the potential to kill a person. Similarly, at the state evidentiary hearing, Dr. Guileyardo testified that "I think it took both [wounds] in this particular case for her to die right at that time." Even assuming *arguendo* that the district court's interpretation of Dr. Guileyardo's testimony–the victim had no chance of surviving the brain wound–is correct, we do not believe that is particularly relevant. Here, the material question is not whether Martha Lennox would have ultimately survived the brain wound but whether she survived long enough after the first gunshot for the second shot to contribute to her death. The thrust of the above state court finding is that the wound to the face contributed to the victim's death. Pondexter has not rebutted this finding with

14

clear and convincing evidence.

During its discussion of the above factual finding, the district court next recognized that Dr. Bolesta admitted that if Ms. Lennox was alive after the first gunshot, the second shot could have contributed to Ms. Lennox's death. We note that Dr. Bolesta's admission lends support to the state court's conclusion of no prejudice.

State court finding of fact number 23 provides that:

> Because Dr. Bolesta could not eliminate the possibility that the victim's mandible [as a result of the second gunshot] did, in fact, contribute to the victim's skull fractures by slamming into the base of the victim's skull, Pondexter has not shown that [Dr.] Guileyardo's testimony was not believable. In fact, given that Dr. Guileyardo conducted the autopsy his testimony is more believable than that of Dr. Bolesta.

The district court acknowledged that the first sentence of the above finding is supported by the record. The district court next opined that the fact that Dr. Guileyardo performed the autopsy of the victim could be a reason to credit his testimony over the testimony of Dr. Bolesta. Nonetheless, the district court refused to so credit the testimony because "[w]hen Dr. Guileyardo testified, he never stated that he remembered the autopsy itself; he testified from reviewing his report, just as Dr. Bolesta did." This quote from the district court is a prime example of its failure to accord the state court findings the deference mandated by AEDPA. The fact that Dr. Guileyardo performed the actual autopsy clearly supported the state court's decision to credit his opinion over that of Dr. Bolesta regardless of whether Dr. Guileyardo expressly testified that he remembered performing the actual autopsy.

State court finding of fact number 30 provides that "Based on the greater weight of the evidence in this proceeding, the court finds that the victim was alive at the time both shots were fired into the victim and that each shot contributed to her death." The district court discerned that this

15

finding is fairly supported by the record and that the state court was free to find Dr. Guileyardo's opinion more credible than Dr. Bolesta's opinion. Without further discussion, the district court opined that "this finding does not establish that the two expert opinions were not more or less equally plausible." Again, we do not believe that the district court afforded this very important factual finding proper weight in making the prejudice determination.[12]

State court finding of fact number 38 provides that: "Dr. Bolesta's affidavit and evidentiary hearing testimony . . . admit that both wounds were capable of causing the death of the victim." The district court "adopt[ed] it." Op at 16. This admission by Pondexter's expert witness certainly weighs in favor of finding no prejudice.

State court finding of fact number 39 provides that:

[M]uch of the testimony provided by Dr. Bolesta, while critical of Dr. Guileyardo's conclusions on what "could have" happened, see 20 SF 161, does not substantially differ from many of the admissions given by Dr. Guileyardo on cross examination. See e.g. 20 SF 171 (bullet which entered brain stopped breathing and brain activity); 20 SF 174 (no way to separate out which bullet fractured skull); 20 SF 176-77 (very little blood in her mouth).

---

[12] Relatedly, the Director contends that the district court impermissibly substituted its interpretation of Texas law of concurrent causation with respect to state court conclusion of law number 41, which provides as follows: "Because both shots were sufficient to cause the death of the victim, Pondexter cannot show that he was not responsible for the capital murder. Tex. Penal Code § 6.04(a)." Section 6.04(a) provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly sufficient." The district court ruled that the state court's conclusion of number 41 was based upon an incorrect application of state law. According to the district court, the state court incorrectly concluded that because each wound *could* have caused the victim's death, the wound inflicted by Pondexter *did* cause her death. Contrary to the district court's opinion, state court conclusion of law number 41 is not based upon the finding that each wound alone could have caused the victim's death; instead, the conclusion is based on the previously quoted state court finding of fact that "the victim was alive at the time both shots were fired into the victim and that each shot contributed to her death." Thus, the district court erred in holding that conclusion of law number 41 is based upon an incorrect application of state law.

16

The district court found that most of finding of fact 39 was fairly supported by the record. However, it did disagree that Dr. Bolesta's testimony was consistent with Dr. Guileyardo's admission on cross-examination that there was no way to separate out which bullet fractured Ms. Lennox's skull. The court below found that this part of the finding lacked support in the record because although Dr. Bolesta testified that it was possible that a jaw wound could cause a fracture in the base of the skull, Dr. Bolesta was never asked which gunshot actually caused the fracture in the base of the skull. Here again, we believe the district court was failing to accord proper deference to the fact finding. As indicated, the state court's factual finding was *not* that Dr. Bolesta testified that it was impossible to determine which bullet caused the fracture. Instead, the state court found that Dr. Bolesta's testimony was "not substantially differ[ent]" from certain admissions made by Dr. Guileyardo during cross-examination. Pondexter did not rebut this finding with clear and convincing evidence. This finding is perhaps the most significant of all the factual findings in that if Dr. Bolesta's testimony is not substantially different from admissions made by Dr. Guileyardo during cross-examination, then such a finding leads almost inexorably to finding no prejudice.

In conclusion, we find that Pondexter has not shown a probability sufficient to undermine our confidence in the outcome of his trial in view of the ineffective assistance claim relating solely to Pondexter's alternative, more inculpatory defensive theory, Pondexter's apparent belief that the victim was alive as he shot her,[13] and most importantly, the following unrebutted state court factual findings: (1) that Dr. Guileyardo's testimony was more credible and, unlike Dr. Bolesta's testimony, supported by scientific authority; (2) that Dr. Bolesta's testimony does not substantially differ from

---

[13] As previously set forth, Pondexter shot the victim and stated "that's how you smoke a bitch."

17

certain key admissions Dr. Guileyardo made during cross-examination; and (3) that Dr. Bolesta's affidavit and evidentiary hearing testimony concede that both wounds were capable of causing the death of the victim. *See Johnson v. Scott,* 68 F.3d 106, 111 (5th Cir. 1995) ("Although [the petitioner's] experts may have been able to weaken some of the state's evidence, there is not a reasonable probability that their testimony would have given jurors a reasonable doubt respecting guilt."). Applying the deferential AEDPA standard, we hold that the state court's conclusion was not contrary to, or an unreasonable application of, established federal law.

For the above reasons, the district court's judgment is vacated and remanded for further proceedings.

VACATED and REMANDED.