United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 03-41626

————————————

BRYAN ERIC WOLFE,

Petitioner - Appellant,

versus

DOUG DRETKE,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent - Appellee.

————————————————————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
District Court Cause No. 98-CV-210

————————————————————————————————————————

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge.

Petitioner Bryan Eric Wolfe was convicted of capital murder in Texas state court and sentenced to death. After exhausting his state remedies, Wolfe applied for federal habeas relief. The district court denied Wolfe's application for a writ of habeas corpus, but it granted Wolfe a certificate of appealability (COA) for his ineffective assistance of counsel claim. As part of this appeal, Wolfe asks this court for a COA on an additional issue:

———————————————

[1]Pursuant to 5TH CIRCUIT RULE 47.5.4, this court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

whether his ineffective assistance claim falls within the
presumed prejudice exception.  After considering these issues on
appeal, this court denies Wolfe's request for a COA and affirms
the judgment of the district court.

**Background of Wolfe's Appeal**

The Texas Court of Criminal Appeals summarized the evidence
presented during trial in its opinion on direct appeal:

> The body of 84 year old Bertha Lemell was found on the
> floor of her home, along with a change purse and some
> scattered coins. A number of black-eyed peas were also
> strewn on the floor. According to the testimony of a
> medical examiner, the victim had twenty-six stab wounds
> to the head, trunk, and abdomen. Blood found at the
> crime scene was subjected to serology and DNA tests. A
> serologist testified that the physical characteristics
> found in [Wolfe's] blood matched blood found at the
> crime scene and that those characteristics occurred in
> only 0.2 percent of the African-American population.
> [Wolfe is African-American.] The DNA test results
> showed that [Wolfe's] blood and the blood found at the
> crime scene shared a DNA pattern that was estimated to
> appear in approximately 1 in 10 million Caucasians, in
> approximately 1 in 1.7 million African-Americans, and
> in approximately 1 in 8.2 million Hispanics. Testimony
> at trial showed that Lemell was a close friend of
> [Wolfe's] wife, that [Wolfe] lived in the same
> neighborhood, and that he was seen within a few blocks
> of the crime scene shortly before and shortly after the
> murder. The residence showed no sign of forced entry.
> The evidence also showed that [Wolfe] had a cut on his
> fingers shortly after the murder.
>
> ....Testimony showed that Lemell routinely kept money
> in a coin purse. She also kept black-eyed peas in her
> purse for good luck. Brenda Vallian, a friend of the
> victim, testified that she took Lemell shopping on the
> day of the offense and that she saw Lemell pull out
> sixty dollars in cash, pay for groceries with less than
> twenty dollars, and put the remaining money back into
> her coin purse. After the murder, police officers
> arriving at the scene found the coin purse on the

2

floor, unlatched, and containing only a single coin.[2] Because no one witnessed the crime, the State obtained Wolfe's conviction based on DNA analysis of the blood collected at the crime scene.

During the sentencing portion of Wolfe's trial, the prosecutor presented evidence that: Wolfe confessed to committing armed robbery in 1983; Wolfe was convicted for committing another robbery in 1989; after serving time in prison for the robbery, Wolfe was paroled on work release; and Wolfe absconded from the work release center. In defense, Wolfe's trial attorney, Harold Laine, presented evidence from a psychologist who opined that Wolfe would not be dangerous in an institutional setting and attributed Wolfe's actions to intoxication. Laine also called a correctional officer who testified that Wolfe had been assaulted while in custody awaiting trial. After considering this evidence, the jury determined that a probability existed that Wolfe would commit criminal acts of violence that would constitute a continuing threat to society, and insufficient mitigating circumstances existed to warrant a sentence of life imprisonment rather than death.[3] Accordingly, the state trial court entered a judgment sentencing Wolfe to death. The Texas

---

[2]*Wolfe v. State*, 917 S.W.2d 270, 274-75 (Tex. Crim. App. 1996).

[3]*See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2 (Vernon Supp. 2004) (instructing court on questions to be submitted to jury during punishment phase of capital case).

Court of Criminal Appeals affirmed that judgment on direct appeal.

Wolfe then moved for habeas relief in state court. As part of his state habeas proceeding, Wolfe argued that Laine was ineffective because he failed to prepare for trial. In particular, Wolfe complained that Laine did not prepare to challenge the State's DNA evidence. Wolfe contended that Laine's failures substantially impaired his defense and should be considered the only reason he received the death penalty. The state habeas judge, who was also the trial judge, however, determined that Laine's performance was not deficient. After reviewing the record and the habeas judge's findings, the Texas Court of Criminal Appeals denied Wolfe's application for habeas relief.

Wolfe then applied for federal habeas relief on various grounds to include ineffective assistance of counsel. The United States Magistrate Judge presided over pretrial proceedings. Initially, the magistrate judge granted Wolfe's request for discovery concerning biological evidence and DNA testing conducted prior to trial. The magistrate judge also authorized funding for DNA testing and an evidentiary hearing. Later, however, the magistrate judge stayed further proceedings so Wolfe could take advantage of a newly-enacted state DNA testing statute. The results of further testing did not favor Wolfe. The magistrate judge then proceeded to consider Wolfe's

4

application for habeas relief and issued a report that recommended denying Wolfe's application. Because Wolfe objected to the report, the district court conducted a de novo review. After its review, the district court denied Wolfe's application.

In regard to Wolfe's ineffective assistance of counsel claim, the district court found that Wolfe had not shown he was prejudiced by his attorney's failure to better prepare himself for challenging the State's DNA evidence. Although not explicitly stated, the district court implicitly determined that the state court's disposition of the claim was not an unreasonable application of clearly established federal law. After denying Wolfe's application, the district court granted Wolfe a COA for his ineffective assistance claim, but denied his request for a COA for the presumed prejudice issue. In this appeal, Wolfe asks this court for a COA on the latter claim. This court first considers that request.

## Standard for Obtaining a COA

To obtain a COA, Wolfe must make "a substantial showing of the denial of a constitutional right."[4] To make this showing, Wolfe must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

---

[4]28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

presented were adequate to deserve encouragement to proceed further."[5]  Because the district court denied relief on the merits, rather than on procedural grounds, Wolfe "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[6]

In determining whether to grant a COA, this court's examination is limited "to a threshold inquiry into the underlying merit of [Wolfe's] claim[]."[7]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."[8]  Instead, this court's determination is based on "an overview of the claims in the habeas petition and a general assessment of their merits."[9]  "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination."[10]

### Wolfe's Presumed Prejudice Argument

---

[5]*Miller-El*, 123 S. Ct. at 1039 (quoting *Slack*, 529 U.S. at 484).

[6]*Slack*, 529 U.S. at 484.

[7]*Miller-El*, 123 S. Ct. at 1034.

[8]*Id*. at 1039.

[9]*Id*.

[10]*Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir. 2003).

In his federal habeas proceeding, Wolfe maintained that Laine's pretrial and trial failures rendered his criminal proceeding non-adversarial. Based on this characterization, Wolfe asked the district court to presume prejudice in assessing Laine's performance. Although Wolfe relied on the standards set out in *Strickland v. Washington*[11] in making his ineffective assistance claim, the district court considered the applicability of the United States Supreme Court's decision in *United States v. Cronic*,[12] but determined it did not apply. On appeal, Wolfe relies on *Cronic*.

In *Cronic*, the Supreme Court stated that, in order to prevail on an ineffective assistance of counsel claim, a criminal defendant must ordinarily prove that the results of his criminal proceeding would have been different absent his attorney's deficiencies.[13] The Court explained, however, that if an attorney entirely fails to subject the prosecution's case to meaningful adversarial testing, a denial of the Sixth Amendment right to counsel occurs, making the adversary process itself presumptively unreliable.[14] In that circumstance, a court presumes the defendant was prejudiced by his attorney's

[11]*Strickland v. Washington*, 466 U.S. 668 (1984).

[12]*United States v. Cronic*, 466 U.S. 648, 659 (1984).

[13]*See Cronic*, 466 U.S. at 658.

[14]*See id.* at 659.

deficiencies.  But in order for a court to presume prejudice, an attorney's failure must be complete.[15]  Failures "of the same ilk as other specific attorney errors"[16] remain subject to "*Strickland's* performance and prejudice components."[17]

In considering the applicability of *Cronic*, the district court determined that the "aspects of counsel's performance challenged by Wolfe (failure to adequately prepare for cross-examination, failure to present mitigating evidence, etc.) are of the same ilk as other specific attorney errors held subject to *Strickland's* performance and prejudice components."  Accordingly, the district court applied *Strickland* rather than *Cronic*, and required Wolfe to prove prejudice.

Although the district court considered Wolfe's presumed-prejudice argument, Wolfe failed to exhaust this argument in state court.  To obtain federal habeas corpus relief, a petitioner must first exhaust all claims in state court prior to requesting federal collateral relief.[18]

> Whether a federal habeas petitioner has exhausted state remedies is a question of law. To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts. It is not enough that all the

---

[15]*See Bell v. Cone*, 535 U.S. 685, 697 (2002).

[16]*Bell*, 535 U.S. at 697.

[17]*Id.* at 697-98.

[18]*See* 28 U.S.C. § 2254(b)(1); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

8

facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Indeed, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement.[19]

To apply these principles to the instant appeal, this court must ask whether Wolfe fairly presented the substance of his presumed-prejudice argument in state court.

Rather than ask the state court to presume prejudice, Wolfe argued that he had been actually prejudiced. In his first petition, Laine complained that his attorney's conduct substantially impaired his defense and that his attorney's failures should be considered the only reason he received the death penalty. In his amended petition, Wolfe complained that he would not have been assessed the death penalty if his attorney had prepared for the State's punishment evidence. Neither petition argued that Laine's pretrial and trial failures rendered his criminal proceeding non-adversarial, asked the state court to presume prejudice from Laine's purported failures, or relied on *Cronic*. Consequently, Wolfe did not present the substance of his presumed-prejudice issue in state court. As a result, Wolfe did not exhaust this argument in state court. Because he did not exhaust this argument in state court, Wolfe is not entitled to

---

[19]*Wilder*, 274 F.3d at 259 (internal quotes and citations omitted).

9

this court's consideration of the argument now.

But even if Wolfe's state habeas petition could be construed to advance the argument, Wolfe would not be entitled to the presumption set out in *Cronic* because he complains about failures of the same ilk as the specific attorney failures complained about in *Strickland*.[20]  In *Strickland*, the petitioner complained that his attorney failed to ask for a continuance to prepare for sentencing, to request a psychiatric examination, to investigate and present character witnesses, to seek a presentence investigation report, to present meaningful argument to the sentencing judge, and to investigate the medical examiner's report or cross-examine the medical experts.[21]

In district court, Wolfe complained that:

- Laine did not hire medical or scientific experts to challenge the State's DNA evidence or the State's theory about how Wolfe received cuts to his hands,

- Laine's cross-examination of the State's medical and DNA experts was inadequate and ineffective,

- Laine did not use any treatises or accepted reference materials in cross-examining the DNA experts,

- Laine failed to ask for funds for a defense DNA expert until after jury selection,

- Laine failed to call defense witnesses during the guilt/innocence phase of trial, and

- Laine failed to present mitigation evidence which

---

[20]*See Bell*, 535 U.S. at 697–98.

[21]*See Strickland*, 466 U.S. at 676.

10

would have prevented the findings necessary for the death penalty.

These complaints are specific errors of the same type complained about in *Strickland*. They do not reflect a total failure. As a result, *Strickland*, not *Cronic*, applies to Wolfe's ineffective assistance claim. Reasonable jurists would not debate the applicability of *Strickland*. Thus, the district court's assessment of the applicability of *Strickland* is correct.

The court DENIES Wolfe's request for a COA. Having resolved this issue, the court now considers Wolfe's ineffective assistance of counsel claim.

**Standard for Reviewing an Ineffective Assistance Claim**

In a habeas corpus appeal, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standards to the state court's decision as did the district court.[22] This court may not grant relief on a claim a state court has adjudicated on the merits "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[23] "A state court's decision is deemed 'contrary to' clearly established federal law

---

[22]*See Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004).

[23]28 U.S.C. § 2254(d)(1).

11

if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."[24] "A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable."[25] This court presumes the state court findings of fact are correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.[26]

### Wolfe's Ineffective Assistance Claim

Wolfe's argument on appeal is multifarious—complaining about Laine's lack of contact with him, the failure to take statements from witnesses, the failure to obtain a plea bargain agreement, and the failure to call defense witnesses—but Wolfe's argument focuses on Laine's purported failure to prepare for challenging the State's DNA evidence. Indeed, the thrust of his claim has always been that his attorney failed to prepare to challenge the State's DNA evidence.[27] Wolfe, however, expanded his arguments

---

[24]*Busby*, 359 F.3d at 713 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

[25]*Pondexter v. Dretke*, 346 F.3d 142, 146 (5th Cir. 2003).

[26]*See* 28 U.S.C. § 2254(e)(1).

[27]In his first petition for state habeas relief, Wolfe complained his attorney: failed to hire medical or scientific experts, inadequately cross-examined the State's experts, failed to challenge the State's evidence that cuts to his hands were caused by a knife, failed to hire an expert to opine that the

12

through various pleadings after he obtained additional discovery during his federal habeas proceeding.[28]

Prior to his federal habeas proceeding, Wolfe was unable to depose Laine. During Wolfe's state habeas proceeding, the only evidence of Laine's performance was Laine's affidavit and the state habeas's judge personal observations of Laine during trial.

---

cuts resulted from a broken beer bottle, and was unprepared to address the State's punishment evidence.

In his amended petition, Wolfe complained his attorney: did not use any treatises or accepted reference materials in cross-examining DNA experts, did not ask for funds for a DNA expert until after jury selection, failed to call witnesses during the guilt-innocence phase of trial, and failed to present mitigating evidence which would have prevented the findings necessary for the death penalty.

[28]For example, in his motion for an evidentiary hearing, Wolfe complained that Laine had not met with him for 18 months before trial, and asserted that he may have considered entering a guilty plea to lesser sentence or a lesser charge had he been offered a plea bargain agreement and had the evidence been explained to him. Wolfe also complained that Laine did not cross-examine the State's DNA witnesses about the possibility of contamination.

In his response to the respondent's motion to reconsider an order granting his requests for discovery and a stay, Wolfe asserted that Laine did not have a sufficient grasp of the DNA evidence to adequately cross-examine the State's witnesses because the materials he received were insufficient for review.

Through a notice of filing of an affidavit, Wolfe asserted that Laine was deficient for failing to use Wolfe's wife as a punishment witness, and that his wife would have testified that Wolfe was a good husband and father.

In response to the respondent's motion for summary judgment, Wolfe complained that Laine failed to promptly investigate his case.

In his objections to the memorandum and recommendation of the United States Magistrate Judge, Wolfe argued that the district court should presume prejudice in considering his claim, and complained that Laine did not know about the State's punishment evidence of extraneous bad acts.

13

In his affidavit, Laine described his preparation for trial. With the benefit of Laine's deposition and additional discovery, Wolfe now maintains that the state habeas court's determination of his ineffective assistance claim was an unreasonable application of federal law to the facts of his case because it was based on Laine's fraudulent affidavit.

In his affidavit, Laine attested that he reviewed articles, treatises, and cases; spoke with attorneys who had trial experience with DNA; consulted with a DNA expert; and requested the State's DNA materials. Wolfe, however, contends Laine had no ability to understand DNA evidence or to cross-examine the State's DNA witnesses. To support this argument, Wolfe relies on an affidavit by a DNA expert he retained during his federal habeas proceeding who attested that the DNA expert Laine hired for trial could not have provided an accurate assessment of the State's DNA evidence because the expert did not have the autorads[29] from the State's DNA analysis.

To establish ineffective assistance of counsel, a criminal defendant must show that his attorney's assistance was deficient

---

[29]Wolfe's expert explained, "[t]he autorads are X ray films that contain the work product of the . . . DNA analysis. . . . Autorads are to a DNA analysis what an X ray film is to a potential broken bone analysis. A scientist can no more render a second opinion regarding this DNA analysis without the autorads than a doctor could render a second opinion about an orthopedic problem without examining the patient X rays."

14

and that the deficiency prejudiced him.[30]  "To establish

deficient performance, a petitioner must demonstrate that

counsel's representation 'fell below an objective standard of

reasonableness.'"[31]  "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect on the

judgment."[32]  Thus, a defendant must prove prejudice to succeed

on a claim of ineffective assistance of counsel.[33]

> When a defendant challenges a death sentence such as
> the one at issue in this case, the question is whether
> there is a reasonable probability that, absent the
> errors, the sentencer—including an appellate court, to
> the extent it independently reweighs the evidence—would
> have concluded that the balance of aggravating and
> mitigating circumstances did not warrant death.[34]

A court considering an ineffective assistance claim is not

required to determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a

result of the alleged deficiencies.[35]  "If it is easier to

dispose of an ineffectiveness claim on the ground of lack of

---

[30]*See Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir.),
*cert. denied*, 124 S. Ct. 430 (2003).

[31]*See Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003)(quoting
*Strickland*).

[32]*Strickland*, 466 U.S. at 691.

[33]*Id.* at 693.

[34]*Id.* at 695.

[35]*Id.* at 697.

15

sufficient prejudice," a reviewing court may take that course.[36] The district court followed that approach.

Although Wolfe maintains the district court erred because it simply deferred to the state court's disposition of his claim, the district court applied well-established principles for an ineffective assistance of counsel claim. Rather than evaluate whether each alleged attorney failure constituted deficient performance, the district court considered whether Wolfe proved prejudice. For each complaint, the district court found that Wolfe had not established prejudice.

As for Wolfe's complaint about Laine's failure to adequately prepare for challenging the State's DNA evidence, the district court found that Wolfe failed to show that better preparation would have either uncovered exculpatory evidence or weakened the evidence against him, and concluded that Wolfe failed to show he was prejudiced by the purported lack of preparation. The record supports this determination.

Wolfe presented an affidavit from a DNA expert he retained during his federal habeas proceeding, but the information in the affidavit only challenges the work done by Wolfe's trial DNA expert. In particular, the affiant explained that the expert hired during trial could not have properly assessed the FBI's DNA work because he did not have the autorads which form the

---

[36] *Id.* at 697.

16

scientific basis for DNA analysis.  The expert opined that

Wolfe's trial counsel was unprepared to either understand or

confront the DNA evidence in any meaningful way.  Despite this

characterization, Wolfe did not show that better preparation, or

testimony by a defense DNA expert, would have changed the jury's

verdict.

Although the thrust of his ineffective assistance claim

applies to guilt/innocence, Wolfe seeks a new sentencing trial.

Wolfe maintains the prejudice he suffered as a result of Laine's

failures is that he received the death penalty.  Wolfe

characterizes Laine as the sole reason he received the death

penalty, but Laine's being better prepared for the State's DNA

evidence would not have changed this result.  Without evidence

showing that the results of the FBI's DNA testing was unreliable,

or that the DNA evidence presented at trial was inaccurate, Wolfe

cannot show prejudice.[37]  The results of subsequent DNA testing

show that further investigation and further preparation would

have produced nothing that would have changed the jury's verdict.

Even if Laine had been better prepared, no reasonable probability

---

[37]*Compare House v. Bell*, 311 F.3d 767 (6th Cir. 2002)
(certifying questions to the Supreme Court of Tennessee about
eligibility for death penalty where post-trial DNA evidence
showed semen introduced at defendant's trial to prove his sexual
assault was not defendant's semen), *with Satcher v. Pruett*, 126
F.3d 561 (4th Cir. 1997) (finding that new DNA evidence showing
at most that earlier tests were inconclusive, but not that
someone other than defendant was source of DNA sample taken from
crime scene, did not sufficiently establish actual innocence to
allow for consideration of procedurally defaulted claims).

exists that the results of Wolfe's criminal proceeding would have been any different.

The district court also applied well-established principles to Wolfe's complaint that Laine failed to negotiate a plea bargain agreement. Specifically, the district court concluded that Wolfe could not prove prejudice because he did not establish that the State would have offered a plea bargain even if Laine had pursued one. In his affidavit, Laine stated that he sought out a plea bargain agreement even though Wolfe insisted that he would not plead guilty to any charge. Laine explained that, despite Wolfe's declaration, he attempted to obtain a plea bargain for aggravated robbery, murder or capital murder without the death sentence, but was told "no." The district court treated this assertion as a state-court finding of fact that could only be rebutted with clear and convincing evidence.

Although Wolfe maintains that Laine's deposition proves Laine's affidavit is "a half-truth or outright lie," the deposition does not support this characterization. The jail visitor records Wolfe relies upon place Laine's statements about his contact with Wolfe into question, but Laine offered a plausible explanation during his deposition about why the records do not reflect his visits.[38] The record indicates Laine did not

---

[38]Laine explained that during the time Wolfe awaited trial, he represented many criminal defendants and frequently visited the jail to see his clients. Laine explained that although he signed the visitor log to see a particular inmate, he often saw

18

want to represent Wolfe and had little time to prepare for trial, but the record also indicates Laine hired an investigator to explore the circumstances of the criminal allegations, attempted to obtain a plea bargain agreement, presented Wolfe's explanation for the cuts on his hands, challenged the State's witnesses, and attempted to obtain mitigation witnesses. Wolfe presented statistics indicating the State offered plea bargains to other capital murder defendants,[39] but the statistics do not rebut Laine's assertion that the prosecutor told him that the State would not offer Wolfe a plea bargain by clear and convincing evidence. In addition, nothing indicates that the prosecutor would have offered Wolfe a plea bargain for a life sentence had Laine been better prepared to challenge the State's DNA evidence. Because Wolfe did not rebut the state court's finding that the State would not have offered Wolfe a plea bargain, the district

---

other inmates while he was at the jail.

[39]Wolfe asserts that the statistics show that the State offered a plea bargain to every other capital murder defendant, except those defendants who killed law enforcement officers or who committed multiple murders involving children. The statistics, however, do not reflect enough details to reach that conclusion. The statistics reflect: the defendant's name, age, race, file date, indictment number, indictment date, offense, disposition date, disposition, and sentence.

Wolfe also contends he proved he would have considered a plea bargain agreement. For this assertion, Wolfe relies on a letter he wrote to his habeas attorney. In that letter, Wolfe did not state that he would have considered a plea bargain. Instead, he complained that Laine did not obtain a plea bargain agreement and that Laine waited until the day before trial to discuss a plea agreement.

court's conclusion that Wolfe did not show prejudice is correct.

The district court applied the well-established principles for considering ineffective assistance to Wolfe's complaint that Laine was ineffective because he did not call Wolfe's wife as a mitigation witness during the punishment phase of trial. The district court concluded that Wolfe did not establish that the jury would have sentenced Wolfe to life in prison had his wife testified during the punishment phase of trial. Although Wolfe presented his wife's affidavit wherein she attested that Wolfe was a good father and husband, Wolfe never presented the affidavit to the state habeas court.

When a federal habeas petitioner presents "material additional evidentiary support" to the federal court that was not presented to the state court, the petitioner fails to exhaust his state remedies.[40] This court does not consider new factual allegations in support of a previously-asserted legal theory—even if the factual allegations come into existence after the state habeas relief is denied—where the factual basis underlying a claim is different from those underlying the state claim.[41] In this case, the factual basis for Wolfe's claim is different from that underlying his state claim.

In district court, Wolfe maintained his wife would have

---

[40]*Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000).

[41]*See Joyner v. King,* 786 F.2d 1317, 1320 (5th Cir. 1986); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983).

20

testified during the punishment phase of his trial.  But Wolfe did not advance this position in state court.  Instead, Wolfe simply complained that Laine failed to present mitigating evidence.  Thus, Wolfe's argument in federal court is different than it was in state court.  As a result, the district court was precluded from considering the allegation that Wolfe's wife would have presented mitigating evidence.

Without this assertion, the state habeas court and the district court properly relied on the statement in Laine's affidavit that the wife did not want to testify.  This statement supports the district court's conclusion that Wolfe did not establish that the jury would have sentenced him to life in prison had his wife testified during the punishment phase of trial.  Consequently, the district court correctly decided this matter.

## Conclusion

The district court carefully considered the arguments presented in Wolfe's federal habeas application.  Rather than determine whether each specific complaint constituted ineffective assistance, or whether the totality of Laine's purported failures constituted ineffective assistance, the district court considered *Strickland's* prejudice question.  In considering prejudice, the district court correctly determined that Wolfe had not shown he was prejudiced by Laine's purported failures.  Although the state

21

habeas court disposed of Wolfe's state habeas application differently than the district court disposed of Wolfe's federal application, the state court's decision is not contrary to, and does not involve an unreasonable application of, clearly-established federal law.  As a result, this court AFFIRMS the judgment of the district court.

AFFIRMED.