

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-165-CR

EDDIE DON PINKSTON, JR.                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.    Introduction

Appellant Eddie Don Pinkston, Jr. appeals his convictions and sentences for aggravated assault with a deadly weapon and aggravated robbery with a stick used as a deadly weapon. In two points, Appellant challenges the legal and factual sufficiency of the aggravated robbery conviction and argues that his

---

[1] *See* Tex. R. App. P. 47.4.

convictions violate double jeopardy. We modify the judgment in part and affirm it as modified.

## II. Factual and procedural background

On May 19, 2007, Rene Rios went to the store to purchase a long-distance phone card and took his neighbor, Appellant, with him. When Rios purchased the card, he had approximately $400 in his wallet, in twenty dollar increments. Rios testified that Appellant was present during the purchase and in a position to see the money in Rios's wallet.

Rios and Appellant returned to Rios's house. Rios testified that he was talking to Appellant outside when "somebody hit me from the back, I turned and then I received the other hit in the face." Rios stated that he did not see the object used to hit him but knew it was not someone's hand because the object was very hard. Rios stated that Appellant and two other individuals tried to obtain his billfold while he was running away from them toward the back of his house. He testified that he could feel their hands trying to "pull at his billfold" inside his back pocket.[2] Rios testified that his major injury was near his right eye.

---

[2] When asked about his previous statement before trial to his attorney that Appellant said the word "wallet" during the attack, Rios stated that he was not absolutely certain that he had heard Appellant say that word.

2

After the attack, Officer Mason Fincher arrived at the scene. Officer Fincher stated that Rios had a large laceration on the back of his head and a large swelling to the right side of his face. He testified that he was not sure if Rios was "hit so hard that it [] had split the skin open" or if Rios had been "shot near the eye." Officer Fincher stated that he had asked Rios questions through his sister, Theresa, because Rios did not speak English. Theresa told him that the suspect's name was "Eric" who lived in the Pinkston home next to Rios's house.

Officer Fincher testified that he had called for an ambulance because Rios's injuries were extensive, causing him to "slip[] in and out of consciousness." Officer Fincher stated that Rios's injuries were severe enough to put him in fear that Rios could "expire at that point." Officer Fincher assumed that the suspect, "Eric," was actually Appellant and retrieved a mugshot to show Theresa, who confirmed "Eric" was in fact "Eddie Pinkston." Officer Fincher then went to the hospital and took photographs of Rios's injuries, which included a laceration near Rios's eye and the laceration on the back of Rios's head.

Rios testified that he stayed in the hospital for "two or three days" and that doctors surgically attached metal plates to the bone near his eye.[3] After Rios's surgery, Detective B.K. McHorse spoke with him through an interpreter, Robert Vargas. Detective McHorse testified that he provided a photo spread, and Rios identified Appellant out of six individuals with similar facial features. Detective McHorse wrote the original warrant and presented it to the judge; Detective Billy Randolph took over the rest of the investigation.

Police arrested Appellant on June 22, 2007. On June 26, 2007, Detective Randolph interviewed Appellant. In the interview, Appellant waived his *Miranda* rights and discussed the activities he had participated in on May 19, 2007. Appellant initially denied any knowledge of the attack on Rios. Appellant then admitted that Rios spoke with him around 8 or 9 o'clock that night and that Appellant "went and got [powder] cocaine for him." Appellant stated that he "called his partner," who brought the cocaine. Appellant said that Rios paid his friend, not him, for the cocaine and it was worth "twenty to thirty dollars."[4]

---

[3] Rios testified that he works "very little" now because he suffers from convulsions, which he did not experience prior to the attack. Rios stated that he also suffers from memory loss.

[4] Detective Randolph testified about this interview and stated that Appellant had also told him that he "fronted" Rios the cocaine, expecting to be paid later.

4

Appellant eventually admitted in the interview that he saw the confrontation with Rios around midnight and that "it was over drugs." Appellant did not initially identify the other two participants of the attack but then stated one of the men was named "Wal-Mart" and the other individual was the friend who brought the cocaine. Appellant then told Detective Randolph that there was no robbery and that "if anything, [he] assaulted [Rios]." Immediately after this statement, Appellant said that this "was a dope thing" and "he didn't want to give me my money." Appellant told Detective Randolph that he had hit Rios once or twice with a stick. When Detective Randolph stated that Rios's injuries were not consistent with the use of a stick, Appellant stated that the weapon he had used was more akin to a "two-by-four" piece of wood. Appellant said that he left after the attack ended.

A grand jury indicted Appellant for aggravated robbery and aggravated assault. The indictment stated that Appellant

> did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury to another, Rene Rios, by hitting him with a stick, and the defendant used or exhibited a deadly weapon, to-wit: a stick, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

> Count two: and it is further presented in and to said court that the defendant in the county of Tarrant and state aforesaid on or about the 19th day of May, 2007, did intentionally or knowingly cause

5

bodily injury to Rene Rios by hitting him with a stick, and the defendant did use or exhibit a deadly weapon during the commission of the assault, to wit: a stick, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

After a bench trial, the court found Appellant guilty of both aggravated robbery and aggravated assault. The trial court sentenced Appellant to thirty years' imprisonment for both convictions, with the sentences running concurrently.

## III. Legal and factual sufficiency challenge

In his first point, Appellant argues that the evidence at trial was legally and factually insufficient to prove that he was in the course of committing a theft or had intent to obtain and maintain control of Rios's property when he assaulted Rios.

### A. Legal sufficiency standard of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

6

The trial judge, when sitting as the sole trier of fact, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

**B.    Factual sufficiency standard of review**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is

7

clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the judgment. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the trial court's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor. *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's

8

determinations, "particularly those determinations concerning the weight and credibility of the evidence."  *Id*. at 9.

**C.    Applicable law**

The State is required to prove every element of an offense beyond a reasonable doubt.  *See* Tex. Penal Code Ann. § 2.01 (Vernon 2003).  The penal code describes robbery under section 29.02 as,

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31[5] and with intent to obtain or maintain control of the property, he:
>
> > (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
> >
> > (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

*Id*. § 29.02(a) (Vernon 2003).

Penal code section 29.01 defines the phrase "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."  *See id.* § 29.01 (Vernon 2003).  Thus, proof of a completed theft is not required to establish robbery.  *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App.

---

[5] Under section 31.03, theft is defined as "unlawfully appropriat[ing] property with intent to deprive the owner of property."  Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2008).

9

1996), *cert. denied*, 544 U.S. 1037; *see also Purser v. State*, 902 S.W.2d 641, 647 (Tex. App.—El Paso 1995, pet. ref'd) (stating that the actual commission of theft "is not a prerequisite" for robbery, as the "gravamen of robbery is the assaultive conduct and not the theft"), *cert. denied*, 525 U.S. 838 (1998).

Under section 29.03, aggravated robbery occurs when a person commits robbery as defined in section 29.02 and (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon. *See id*. § 29.03.

## D.    Legal sufficiency analysis

In this case, the State provided evidence of Appellant's acts while in the course of committing theft. The State offered Appellant's recorded interview, which revealed that Appellant had completed a drug transaction with Rios earlier that day and that Rios may or may not have paid him for the cocaine. Although Appellant denied robbing Rios, Appellant stated that the confrontation was "over drugs," that he assaulted Rios with a "two-by-four" sized stick, and that Rios "didn't want to give [him] [his] money."[6]

The State also offered testimony from the sole witness of the attack, Rios, who confirmed that Appellant was speaking to him when he was hit from

---

[6] *See Collins v. State*, 800 S.W.2d 267, 269 (Tex. App.—Houston [14th Dist.] 1990, no pet.) (holding that evidence of a creditor assaulting a debtor for the purpose of collecting a debt was sufficient to support aggravated robbery conviction).

10

behind by two individuals. Rios stated that as he was running away, he could feel Appellant and the two other men[7] "screaming one to another" and "pulling, trying to get the billfold" located inside of Rios's back pocket. Although Rios stated that Appellant was unable to obtain the wallet, his alleged acts in attempting to grab Rios's wallet were sufficient to establish he was in the course of committing theft and had intent to obtain and maintain control of the property under the statute. *See* Tex. Penal Code Ann. §§ 29.01, 29.02; *Wolfe*, 917 S.W.2d at 275, *Huerta v. State*, No. 13-05-00272-CR, 2007 WL 2215952, at *2 (Tex. App.—Corpus Christi Dec. 12, 2007, pet. ref'd) (mem. op., not designated for publication) (stating that "the jury could rationally infer that appellant was attempting to steal [the victim's] wallet, although he was prevented from doing so by [the victim's] flight").

Viewing the evidence in a light most favorable to the prosecution, the trial court could have found beyond a reasonable doubt that, "in the course of committing [a] theft" and "with intent to obtain [and] maintain control" of Rios's property, Appellant intentionally or knowingly caused bodily injury to Rios when he used a deadly weapon to hit Rios. *See* Tex. Penal Code Ann.

---

[7] Rios was not able to identify the other individuals who attacked him from behind but confirmed that Appellant was present and did not warn or help him when the attack happened.

11

§§ 29.02(a)(1), 29.03(a)(2). We hold that the evidence is legally sufficient to support the trial court's judgment. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

### E.    Factual sufficiency analysis

Appellant contends that the evidence is factually insufficient to support the conviction because the State only produced one witness who actually witnessed the incident, Rene Rios, the victim. Appellant urges that Rios's testimony was "speculative at best" and his memory had "significant gaps" that affected his credibility. Rios admitted that he had trouble remembering certain events; however, he was able to describe details surrounding the attack, including his trip to the store with Appellant, his brief conversation with Appellant prior to the attack, the sensation of the object that hit his head, and the "pulling" at his billfold pocket as he fled from the attack. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (stating that a conviction may be supported by testimony of only one witness). It was the sole responsibility of the trial judge as trier of fact to believe or not believe Rios.

Rios's testimony and Appellant's statement that were admitted into evidence and played for the court, together with Detective Randolph's and Officer Fincher's testimonies, allowed the trial court to determine that Appellant's conduct in participating in the attack and in his attempt to take

12

Rios's billfold fell within the statutory definitions of acting "in the course of committing theft" and "with intent to obtain [and] maintain control of. . . property." *See* Tex. Penal Code Ann. §§ 29.01, 29.02(a).

Viewing the evidence in a neutral light, we cannot say that the evidence is so weak that the trial court's determination that Appellant committed aggravated robbery through his actions in the course of committing a theft and with intent to obtain and maintain control of property is clearly wrong or manifestly unjust. We also cannot say that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the trial court's determination is unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold that the evidence is factually sufficient to support the trial court's judgment. Because the evidence is both legally and factually sufficient, we must overrule Appellant's first point.

## IV. Double Jeopardy

In his second point, Appellant argues that the trial court erred by convicting him for both aggravated robbery and aggravated assault. The State concedes that the trial court violated double jeopardy prohibitions, and we agree.

**A.    Applicable law**

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. Const. amend. V.  Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006).  To determine whether both offenses are the same under (3), we must examine the elements of the applicable statutes to determine whether each statute "requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).   Under *Blockburger*, we are to focus on the statutory elements found in the charging instruments.  *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008); *Parrish v. State*, 869 S.W.2d 352, 353–55 (Tex. Crim. App. 1994).

A double jeopardy violation may be raised for the first time on appeal when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.  *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).  For convictions involving multiple

14

punishments for the same offense, the double jeopardy violation is clearly apparent on the face of the record when the record affirmatively shows multiple punishments resulting from the commission of a single act that violated two separate penal statutes, one of which is subsumed in the other. *See Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991), *cert. denied*, 502 U.S. 1110 (1992); *Garfias v. State*, No. 02-06-00398-CR, 2008 WL 2404268, at *1 (Tex. App.—Fort Worth June 12, 2008, pet. granted) (mem. op., not designated for publication); *Perez v. State*, No. 02-06-00225-CR, 2007 WL 2744914, at *6 (Tex. App.—Fort Worth Sept. 20, 2007, pet. ref'd) (mem. op., not designated for publication).

When a defendant has been prosecuted and convicted in a single criminal action of two or more offenses that constitute the same offense, in violation of double jeopardy, the remedy is to apply "the most serious offense test." The most serious offense is the one for which the greatest sentence was assessed; in those cases, the most serious offense is retained and the less serious offense is set aside. *Ex parte Cavazos*, 203 S.W.3d at 338.

**B.    Analysis**

In this case, Appellant did not raise a double jeopardy objection during the bench trial; however, a violation is clear on the face of the record. *See Gonzalez*, 8 S.W.3d at 643. The State relied on Appellant's act of hitting Rios

15

with a stick to prove the aggravated assault offense and part of the aggravated robbery offense. *See* Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2008), §§ 29.02(a)(1), 29.03(a)(2). According to the language in the indictment, for the aggravated assault, the State had to prove Appellant caused bodily injury and "used or exhibited a deadly weapon" ("to wit: a stick") and for the aggravated robbery charge, the State had to prove this same act occurred in the commission of a theft. *See id.* § 22.01(a)(1) (defining assault as intentionally, knowingly or recklessly cause[ing] bodily injury to another), §§ 29.02(a)(2) (defining robbery), 29.03(a)(2) (defining aggravated robbery); *see also, Naji v. State*, No. 02-06-00260-CR, 2007 WL 1266872, at *2 (Tex. App—Fort Worth April 26, 2007, pet. ref'd) (mem. op., not designated for publication) (stating that "there is no robbery without an assault"). Thus, the two convictions violated double jeopardy prohibitions because the two offenses constitute the same offense.

We must retain the conviction for the most serious offense and set the other aside. *Ex parte Cavazos*, 203 S.W.3d at 337. The judgments contain identical sentences,[8] so we retain the aggravated robbery conviction and

_____

[8] Appellant did not raise this discrepancy in his argument; however, the reporter's record reveals that the trial court orally pronounced a sentence of thirty years for the aggravated robbery and ten years for the aggravated assault; however, the written judgments state that both sentences are for thirty

16

sentence and vacate the aggravated assault conviction and sentence. *See Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007) (holding that, when both offenses carry the same punishment, the appellate court may strike either conviction). We retain the aggravated robbery charge because it appears first in the indictment. *See Naji*, 2007 WL 1266872, at *3 (citing *Ex parte Cravens*, 805 S.W.2d 790, 791 (Tex. Crim. App. 1991)) (retaining the first count in the indictment). We sustain Appellant's second point and modify the judgment to reflect only a conviction for aggravated robbery with a deadly weapon and the sentence of thirty years' confinement. *See Naji*, 2007 WL 1266872, at *3.

## V. Conclusion

Having overruled Appellant's first point and sustained his second point, we modify the trial court's judgment to vacate the conviction and sentence for aggravated assault with a deadly weapon and reflect only the conviction for aggravated robbery with a deadly weapon, with the sentence of thirty years'

---

years. The Court of Criminal Appeals has stated that when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls and the judgment must be reformed to conform to that sentence. *See Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). Because our disposition resolves this discrepancy, we will not reform the judgments.

confinement.  We affirm the trial court's judgment as modified.  *See* Tex. R.

App. Proc. 43.2(b).

PER CURIAM

PANEL:  GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 6, 2009