**Bryan Eric WOLFE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71791.**

Court of Criminal Appeals of Texas.

March 6, 1996.

---

Douglas M. Barlow, Beaumont, for appellant.

John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert A. Huttash, State's Atty., Austin, for State.

## OPINION

KELLER, Judge.

Appellant was convicted of the capital murder of Bertha Lemell committed on February 15, 1992, in Jefferson County.[1] The jury answered the punishment issues in the State's favor, and appellant was sentenced to death. Direct appeal to this Court is automatic under Article 37.071 § 2(h).[2] Appellant raises thirteen points of error on appeal. We will affirm.

### 1. Sufficiency of the evidence

#### a. Identity

In point of error six, appellant contends that the evidence is insufficient to prove that he perpetrated the offense.

■ Evidence is sufficient when, viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This court's duty is not to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

■ Evidence presented at trial established the following: The body of 84 year old Bertha Lemell was found on the floor of her home, along with a change purse and some scattered coins. A number of black-eyed peas were also strewn on the floor. According to the testimony of a medical examiner, the victim had twenty-six stab wounds to the head, trunk, and abdomen. Blood found at the crime scene was subjected to serology and DNA tests. A serologist testified that

---

1. Tex.Penal Code § 19.03(a)(2) (1990) provides that a person commits capital murder when "the person intentionally commits the murder in the course of committing or attempting to commit ... robbery...."

2. All references to articles refer to the Texas Code of Criminal Procedure unless otherwise indicated.

the physical characteristics found in appellant's blood matched blood found at the crime scene and that those characteristics occurred in only 0.2 percent of the African–American population. The DNA test results showed that appellant's blood and the blood found at the crime scene shared a DNA pattern that was estimated to appear in approximately 1 in 10 million Caucasians, in approximately 1 in 1.7 million African–Americans, and in approximately 1 in 8.2 million Hispanics. Testimony at trial showed that Lemell was a close friend of appellant's wife, that appellant lived in the same neighborhood, and that he was seen within a few blocks of the crime scene shortly before and shortly after the murder. The residence showed no sign of forced entry. The evidence also showed that appellant had a cut on his fingers shortly after the murder.

Viewed in the light most favorable to the verdict, the blood evidence, appellant's proximity to the crime scene, and the cut on his fingers are sufficient to support the jury's conclusion that appellant perpetrated this offense. Point of error six is overruled.

### b. Underlying offense

█ In point of error five, appellant argues that the evidence is insufficient to support the underlying felony of robbery. Testimony showed that Lemell routinely kept money in a coin purse. She also kept black-eyed peas in her purse for good luck. Brenda Vallian, a friend of the victim, testified that she took Lemell shopping on the day of the offense and that she saw Lemell pull out sixty dollars in cash, pay for groceries with less than twenty dollars, and put the remaining money back into her coin purse. After the murder, police officers arriving at the scene found the coin purse on the floor, unlatched, and containing only a single coin. Blood was found inside the coin purse, although there was not enough to complete a DNA analysis. Coins and black-eyed peas were scattered on the floor of Lemell's otherwise tidy home. Blood was found on top of a locked armoire.

Appellant argues that this evidence is insufficient to show a robbery because it does not show a completed theft and it does not show that he intended to steal anything. He points out that more money was found at the scene than Lemell had received the day prior to the offense. He also argues that the presence of coins on the floor merely indicates that a struggle took place.

█ Proof of a completed theft is not required to establish a robbery. *Demouchette v. State*, 731 S.W.2d 75, 78 (Tex.Crim. App.1986), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). While an intent to steal must be shown in order to prove an attempted theft, this intent may be inferred from circumstantial evidence. *McGee v. State*, 774 S.W.2d 229, 235 (Tex. Crim.App.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). A rational jury could believe that appellant's cut fingers, the blood in the coin purse, the fact that the purse was unlatched, and the scattered coins on the floor proved that appellant reached into the coin purse in an attempt to steal money from Lemell. The jury could also believe that the blood on the top of the locked armoire indicated that appellant had searched there in an effort to find money. Point of error five is overruled.

### 2. *Voir dire*

### a. Death penalty scruples

In points of error one and two, appellant complains that the trial court erroneously granted two State's challenges for cause, against John Sells and Dana Lewis respectively, in violation of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The State challenged both Sells and Lewis on the bases of Art. 35.16(b)(1) (death penalty scruples) and (b)(3) (prejudice against a law upon which the State is entitled to rely). The trial court excused the prospective jurors and overruled appellant's objections.

█ The United States Constitution prohibits excusing a prospective juror for holding conscientious scruples against the death penalty unless his views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Witt*, 469 U.S. at 424, 105 S.Ct. at 852. It is not enough that

the prospective juror's views would "affect" his deliberations. *Ex parte Williams*, 748 S.W.2d 461 (Tex.Crim.App.1988).

■ A prospective juror is challengeable as having a bias or prejudice against a law upon which the State is entitled to rely if he would *always* answer the mitigating circumstances punishment issue, Art. 37.071, § 2(e),[3] in favor of the defendant. *Staley v. State*, 887 S.W.2d 885, 893–894 (Tex.Crim. App.1994). Likewise, a prospective juror is challengeable under (b)(3) if he would *never* answer the "future dangerousness" issue, Art. 37.071, § 2(b)(1),[4] in favor of the State. *Chambers v. State*, 568 S.W.2d 313, 323 (Tex. Crim.App.1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979).

■ Because the trial judge has the opportunity to observe a prospective juror's demeanor, we defer to the trial court if there is any adequate basis in the record to support its decision. *Narvaiz v. State*, 840 S.W.2d 415, 426 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). *White v. State*, 779 S.W.2d 809, 822 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). When the record supports both the ability and inability of a prospective juror to follow the law then we must defer to the trial court's determination. *Goodwin v. State*, 799 S.W.2d 719, 731 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991).

■ The record in this case very clearly shows that the prospective jurors were challengeable for cause. Sells stated that, because of his opposition to the death penalty, he would always answer "no" (in favor of the defendant) to the future dangerousness issue even if he were convinced by the evidence that the answer should be "yes." He further stated that, because of his views, he would always answer "yes" (in favor of the defendant) to the mitigation issue even if he were

convinced by the evidence that the answer should be "no." He also insisted that he would violate his oath in order to avoid imposing the death penalty. Even under questioning from defense counsel, Sells continued to maintain that he would automatically vote "yes" on the mitigation issue.

■ Lewis, a juvenile probation officer, stated that she believed that her views would substantially impair her ability to follow the court's instructions in accordance with her oath. While she had at first expressed an inability to answer "yes" to the future dangerousness issue, after further questioning she indicated that she could answer "yes" if enough proof were advanced. But she stated that, if she answered the future dangerousness issue "yes," and she was convinced that the answer to the mitigation issue should be "no," then she would refuse to answer the mitigation issue because a "no" answer would mean the death penalty. She maintained this position in the face of defense questioning, and when the judge asked her what she would do if he told her that she would be held in contempt of court unless she answered the question, she stated that she would be in contempt and would just have to deal with that.

The responses from Sells and Lewis show that their views concerning the death penalty would prevent them from following the law or their oaths as jurors. Their answers regarding the punishment issues show also that they were biased against laws upon which the State was entitled to rely. As the prospective jurors were challengeable under both (b)(1) and (b)(3) of Art. 35.16, the trial court did not err in granting the State's challenges for cause. Points of error one and two are overruled.

#### b. Felony disqualification

In point of error three, appellant complains that the trial court erroneously grant-

---

**3.** The issue reads as follows:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that

a sentence of life imprisonment rather than a death sentence be imposed.

**4.** The issue states: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

ed the State's challenge for cause against venireman Bubba Andrew. The State challenged Andrew on the ground that he was disqualified from jury service by a prior felony conviction.[5] The voir dire testimony showed that Andrew had been convicted of burglary of a building and was given four years probation. The four years had expired, and he never went back into court concerning the probation after it was imposed. As far as Andrew knew, the case against him was never dismissed. But, he was a registered voter and was not aware of any restriction on his citizenship.

The State challenged as follows:

Your Honor, if it please the Court, I think that we'll need to challenge Mr. Andrew under 35.16(a)(2) in that Mr. Andrew, according to State's Exhibit No. 1, had four years and there is no evidence in the Court's file that there was ever any action ever taken under 42.12 of the Code of Criminal Procedure, Subsection 23.

The trial court granted the State's challenge. The defense objected to the State's challenge after Andrew left the courtroom and later, before exercising peremptory strikes.[6]

▇▇▇ Art. 42.12, § 20 (previously § 23) provides a mechanism to release a convicted person of all legal disabilities upon successful completion of probation. The release from legal disabilities occurs after the trial judge enters an order of discharge and dismisses the case. Appellant claims that the statute is mandatory, and therefore, a person who successfully completes his probation is discharged from his legal disabilities even in the absence of an order from the trial judge. Appellant concludes that, since Andrew completed his probation without any apparent problems, he must now be eligible to serve on a jury.

▇▇▇ The record in the present case supports the State's contention during voir

dire that no order of discharge had been entered.[7] We disagree with appellant's contention that Andrew's disabilities were removed in the absence of such an order. We construe a statute by the plain meaning of its words unless the language of the statute is ambiguous or its plain meaning would lead to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex.Crim.App.1991). The plain language of Article 44.12, § 20(a) clearly contemplates the entry of an order before releasing a defendant from legal disabilities resulting from conviction: when probation expires,

the judge, *by order duly entered* ... shall discharge the defendant. *If* the judge *discharges* the defendant under this section ... the judge ... shall dismiss the accusation ... against the defendant, who shall *thereafter* be released from all penalties and disabilities resulting from the offense."

(Emphasis and ellipses added). The result of this interpretation is not absurd because the legislature may have wished to formulate a method of removing legal disabilities that would be easy to verify. Point of error three is overruled.

### 3. *Jury instructions*

#### a. Lesser-included offense

In point of error seven, appellant complains of the trial court's refusal to submit a requested instruction on the lesser-included offense of murder. He argues that even if the evidence were sufficient to prove that a robbery occurred, the evidence is not conclusive and at least presented a fact question for the jury. He points out that there was no evidence demonstrating that any money or property was actually missing from Lemell's home, that there was actually more money present than Lemell had received the day before, and that no property of the victim was found in appellant's possession.

---

5. Article 35.16(a)(2) provides that a venireman is challengeable for cause if he "has been convicted of theft or any felony."

6. The trial judge had earlier given the defense permission to postpone objections to the State's challenges for cause until the end of voir dire. Peremptory strikes were similarly postponed.

7. The fact that Andrew was registered to vote does not prove the contrary because an order of discharge is not necessarily required for a convicted felon to become eligible to vote. *See* Texas Election Code § 13.001(a)(4)(A) & (B).

Whether a lesser offense instruction must be given is governed by a two-part test:

(1) The lesser offense must be included within the proof necessary to establish the offense charged, and

(2) Some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.

*Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Because the offense of murder is included within the proof necessary to establish capital murder, we are concerned only with the second part of the test.

Where a defendant requests a charge on the lesser-included offense of murder, based upon a dispute about the element that aggravates the murder to capital murder, the second prong of *Rousseau* is satisfied only "[i]f there is some evidence which negates the aggravating element or if the evidence of such aggravating element is so weak that a rational jury might interpret it in such a way as to give it no probative value." *Robertson v. State*, 871 S.W.2d 701, 706–707 (Tex.Crim.App.1993). This test has not been met in the present case. Coins were scattered on the floor, the coin purse was unlatched, blood was found inside the coin purse, blood was found on top of the locked armoire, and appellant's fingers were cut. The record suggests no motive other than robbery for the commission of the murder. There is no evidence even tending to show that appellant committed the murder simply for the sake of killing. There is no evidence negating the underlying offense of robbery, and the evidence supporting the underlying offense is not so weak that the jury could interpret it in such a way as to give it no probative value. Hence, a jury could not rationally conclude that appellant murdered Lemell for reasons unrelated to robbery. Point of error seven is overruled.

### b. *Penry* Issue

In point of error four, appellant argues that the failure of the statutory *Penry* issue (see footnote 3) to assign a burden of proof permits open-ended discretion in viola-

tion of the Eighth Amendment under *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The "open-ended" objection was levelled at *Penry* itself, and the United States Supreme Court responded:

"In contrast to the carefully defined standards that must narrow a sentencer's discretion to *impose* the death sentence, the Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence."

*Penry v. Lynaugh*, 492 U.S. 302, 327, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989), *quoting McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (emphasis in original). The future dangerousness special issue and other non-*Penry* special issues, along with the specifically enumerated murder situations which constitute capital murder, limit the jury's discretion to consider aggravating factors. As noted above, it is appropriate *not* to limit a jury's discretion concerning *mitigating* factors.

Moreover, we have specifically held that the Eighth Amendment does not require that the State be assigned the burden of proof on *Penry* issues. *Barnes v. State*, 876 S.W.2d 316, 330 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Because the Eighth Amendment does not require limitations on a jury's discretion to consider mitigating evidence, the Constitution does not require a burden of proof to be placed upon anyone. Point of error four is overruled.

### c. Parole eligibility

In point of error eleven, appellant complains of the trial court's failure to submit an instruction that a life sentence would make him ineligible for parole for thirty-five years. He claims that the failure to submit this instruction violates both the Eighth Amendment prohibition of cruel and unusual punishments and the Due Process Clause of the Fourteenth Amendment. These issues have been decided adversely to appellant's position. *Broxton v. State*, 909 S.W.2d 912, 919 (Tex.Crim.App.1995). *Smith v. State*,

898 S.W.2d 838 (Tex.Crim.App.1995) (plurality opinion), *cert. denied,* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). Point of error eleven is overruled.

### 4. *Jury Argument*

#### a. Failure to testify

In points of error eight and nine, appellant contends that in closing argument during the guilt-innocence phase of the trial the prosecutor referred to appellant's failure to testify. An exculpatory statement made by appellant to the police was read into evidence. The statement identified family members as possible alibi witnesses. The defense called no witnesses and presented no evidence.

Appellant complains of the underlined statements contained in the following excerpt:

> PROSECUTOR: You know, Mr. Laine [defense counsel] talked to you about Bryan Wolfe [appellant] cutting his hand on a beer bottle. What he didn't talk to you about, what he doesn't want you to consider, is that he told Mitch Woods when he made this statement that he cut his hand on a beer bottle on Wednesday, on Wednesday. And why is Ison Doucett's testimony so important? Because he did not notice the man's hands that were cut. My goodness, he was playing dominoes with him all afternoon off and on. The man lied to Mitch Woods. He cut his hand murdering Bertha Lemell, ladies and gentlemen. That's just what happened. And if he cut his hands on Wednesday, where are his two children to say that's when it happened? Where are his friends to tell you that's when it happened? *Why did Mr. Laine rest behind us?* Where are his friends? Where are—
>
> MR. LAINE: (Interrupting) Your Honor, we're going to object to that. That's a comment on defendant's failure to testify and also an attempt for the State to shift the burden of proof to the defense.
>
> COURT: Overruled.
>
> PROSECUTOR: Where are they? I'll tell you. We have one relative come in and testify; and she didn't notice any cut hands that day until after—until later on that day after he had the opportunity and did, in fact, ladies and gentlemen, murder Bertha Lemell. That's when somebody finally noticed that this man had a cut hand. This is a lie. It didn't happen on Wednesday. He cut his hand on Saturday, February the 15, 1992. And Ison Doucette didn't see it Saturday before she was murdered, and Brenda Vallian didn't see it Saturday before she was murdered. But she saw it after—she saw it later. *I wonder why Bryan Wolfe decided to go ahead and eat barbecue and not go with his wife to check on Ms. Bertha* when she found out that—when Leola found out that Ms. Bertha had been murdered, been shot—
>
> MR. LAINE: (Interrupting) Objection to—that's a comment on failure to testify.
>
> COURT: Overruled.
>
> PROSECUTOR: It's right here in this statement. See, you get—and that's right. You should not consider the fact that he did not testify, but you have his story right here. Here it is, 65A.

(Emphasis as given by appellant).

■ A prosecutor cannot comment on the lack of evidence presented where that comment necessarily refers to the defendant's failure to testify, but language that can reasonably be construed as a failure to present evidence other than the defendant's testimony is not a comment on the failure to testify. *Staley,* 887 S.W.2d at 895. That such language might be construed as an implied or indirect allusion to the defendant's failure to testify is not enough to warrant exclusion. *Id.*

■ For three reasons, the prosecutor's statements were not comments on the failure to testify. First, the reference to resting behind the state can be reasonably construed to be a reference to the failure of appellant's family members to testify as alibi witnesses. We have reversed a conviction where the prosecutor stated that "it is not contested" that defendant intentionally and knowingly committed the crime of indecency with a child where the only witnesses to the crime were the defendant and the victim. *Angel v. State,* 627 S.W.2d 424, 425 (Tex.Crim.App. 1982). Because the only person who could

have "contested" his mental state during the criminal acts was the defendant, the prosecutor's statement was a comment on the defendant's failure to testify. *Id.* at 426. In the present case, however, appellant and the victim were not the only witnesses to the cut on appellant's hands and to the time the cut was observed.

 Second, the statement about barbecue was a rhetorical question based upon the evidence. Rhetorical questions are generally within the scope of jury argument so long as they are based upon a reasonable deduction from the evidence. *Kinnamon v. State,* 791 S.W.2d 84, 90 (Tex.Crim.App. 1990), *overruled on other grounds, Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App. 1994). When a prosecutor asked "Why would a man have 269 pounds of marijuana?" *and* stated that "There has been no explanation for that," we reversed because only the defendant or his codefendant could have given an explanation. *Myers v. State,* 573 S.W.2d 19, 20–21 (Tex.Crim.App.1978). The prosecutor crossed the line from a permissible rhetorical question to a comment on the failure to testify when he added to the rhetorical question that there was no explanation (i.e. someone who could have given an explanation did not testify). We have affirmed the use of a rhetorical question where the prosecutor did not add that there was no explanation. When a prosecutor asked why the defendant was at the scene of the crime (illegal sale of alcohol in dry county), and stated that he did not know and could only surmise the answer, we held that a reasonable construction of the argument was that it constituted a deduction by the prosecutor that the defendant was at the house for the purpose of illegally delivering beer. *Fowler v. State,* 157 Tex.Crim. 147, 247 S.W.2d 393, 394–395 (App.1952). In *Fowler,* the prosecutor did not say that an explanation had not been given; he merely stated that he could only surmise the answer (explanation). In the present case, the prosecutor did not point to the lack of an explanation but merely asked a rhetorical question designed to persuade the jury that appellant did not check on Lemell because he had murdered her.

Finally, both of the prosecutor's comments were references to appellant's exculpatory statement, which was admitted into evidence.[8] A reference to the defendant "not telling everything" where the prosecutor was discussing a written statement made by the defendant has been held not to be a comment on the failure to testify but a reference to the written statement. *Lopez v. State,* 170 Tex. Crim. 208, 339 S.W.2d 906, 910–911 (App. 1960). In the present case, the prosecutor's comments referred to the statement made by appellant rather than the appellant's failure to testify at trial. Points of error eight and nine are overruled.

b. Outside the record/personal opinion

In points of error twelve and thirteen, appellant complains that the prosecutor made a comment which referred to facts outside the record and which constituted the expression of a personal opinion. Appellant complains of the following interchange:

PROSECUTOR: ... Dr. Landrum [appellant's expert witness] doesn't want to talk about that. He doesn't want to talk about the fact that he went off the scale on the psychotic part of the MMPI–II test. He didn't even want to bring you the questions. He just wanted you to see the little dots. He left the questions at Rusk. He didn't want you to see the questions because the questions and the way the man answered them are contrary to what his opinion was on the witness stand. That's just—

DEFENSE COUNSEL: (Interrupting) I object, Your Honor. That's not what the testimony—that's outside the record. That's counsel's own personal opinion.

COURT: Overruled. He's making his argument.

8. In the statement, appellant gave his version of all of his material activities before, during, and after the time the homicide was committed. He denied participating in the homicide, asserted that he was with his wife and children at the time of the killing, explained the cut on his hand by asserting that it was caused when he fell and cut his hand on a beer bottle on a day before the killing, and offered as his reason for not going with his wife to the scene of the homicide the explanation that he was "eating barbecue."

During cross-examination of the expert witness, the answers appellant made to a number of questions on the MMPI–II were discovered. Appellant answered the following questions *true:*

"Evil spirits possess me at times."

"When people do me a wrong, I feel I should pay them back if I can just for the principle of the thing."

"It would be better if almost all laws were thrown away."

"At times I have a strong urge to do something harmful or shocking."

"Sometimes I feel as if I must injure either myself or someone else."

"When several people find themselves in trouble, the best thing for them to do is agree upon a story and stick to it."

"The person who provides temptation by leaving valuable property unprotected is about as much to blame for the theft of it as the one who steals it."

"Sometimes I get so angry and upset I don't know what comes over me."

Appellant answered the following questions *false:*

"I have never done anything dangerous for the thrill of it."

"I am not easily angered."

The prosecutor argued that the answers to these questions were inconsistent with the expert's conclusion that appellant was mentally sound.

■ "[T]he prosecutor may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and not as constituting unsworn testimony." *McKay v. State,* 707 S.W.2d 23, 37 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). In *McKay,* the prosecutor argued that a particular boot made a certain print: "[N]ow who is the expert? You look. You look. You tell me, did not that boot make that print? If so [sic–not?], why not? *Looks like it to me."* *Id.* at 36 (emphasis in original). We held that the prosecutor's opinion was a proper deduction from the evidence. *Id.* at 37.

■ In the present case, the contention that the answers to certain questions on the MMPI–II test were inconsistent with the defense expert's opinion as to appellant's mental condition was an acceptable deduction from the evidence. Points of error twelve and thirteen are overruled.

5. *Failure to hold voluntariness hearing.*

In point of error ten, appellant complains about the trial court's refusal to conduct a hearing on the voluntariness of a statement made by appellant. During an army investigation several years before the commission of the instant offense, appellant confessed to committing a robbery. At the punishment stage of the trial in the instant case, the State sought to use the confession to establish an extraneous offense tending to show that appellant constituted a future danger to society. Initially, the investigating army officer testified that, before appellant made any statement, appellant was advised of his rights and that he was free to terminate the interview and leave the office at any time. The officer further testified that appellant was not in custody and that appellant waived all of his rights in writing and agreed to talk to the officer freely and voluntarily. Before the prosecutor could ask questions concerning the substance of the extraneous offense, defense counsel objected as follows:

Your Honor, we're going to object to anything that is alleged to have been related to this witness from Mr. Wolfe until we have a hearing to determine whether it was, in fact, voluntary and whether, in fact, this comes in under purported Rule 404(b) type evidence to determine its relevancy and then also its prejudicial effect outweighing any probative value to go on this way in front of the jury without any idea what this witness is going to say that Mr. Wolfe said.

The trial court overruled the objection, and the army officer related the details of the confession. Appellant argues that the trial court's failure to conduct a hearing on voluntariness violated Article 38.22 and the due process requirements announced in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We disagree.

During his objection, defense counsel never alleged why the confession might be involuntary. A confession may be deemed "involuntary" under three different theories: (1) failure to comply with Article 38.22, (2) failure to comply with the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or (3) a confession in violation of due process or due course of law because it was not freely given (e.g. coercion, improper influences, incompetency).

Article 38.22, § 6 requires a hearing outside the presence of the jury, "where a question is raised as to the voluntariness of a statement of an accused." But, in the context of Article 38.22, the question of "voluntariness" applies only to statements made in response to custodial interrogation: "Nothing in this article precludes the admission ... of a statement that does not stem from custodial interrogation." Article 38.22 § 5 (ellipse inserted). If an accused is not in custody when he makes a statement, then the question of voluntariness does not arise. Likewise, *Miranda* applies only to statements made during custodial interrogation. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Of course, whether the accused was in custody may be a fact issue to be determined by the trial court at the hearing *if the issue is properly raised*. See *Page v. State*, 614 S.W.2d 819 (Tex.Crim.App.1981).

In contrast, due process involuntariness claims do not necessarily require that the interrogation be custodial. See *Jackson v. Denno*, generally. But in the absence of custody, due process is violated only by confessions that are not in fact freely given rather than by mere noncompliance with prophylactic rules. Whether a confession was in fact freely given is an issue to be decided at a *Jackson* hearing if that issue has been properly raised before the trial court.

In the present case, the army officer testified that appellant was not in custody. The officer also testified that appellant freely and voluntarily agreed to talk. Once this testimony was given, appellant had an obligation to at least *allege* to the trial court that he was in custody, or that his confession was not freely given because of coercion or some other specific reason, in order to raise the issue of voluntariness. Because appellant merely requested a hearing without making either of those allegations, the trial court was justified in concluding that the issue of voluntariness had not been raised because the army officer's testimony established that the confession was voluntary, and appellant gave the trial court no reason to believe otherwise. Point of error ten is overruled.

The judgment of the trial court is AFFIRMED.

Baird, J. concurs with note: For the reasons stated in *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Cr.App.1993), I would find veniremember Andrew's disabilities were removed upon the expiration of his probationary period. However, I would find the error harmless under *Payton v. State*, 572 S.W.2d 677 (Tex.Cr.App.1978). Therefore, I concur in the resolution of the third point of error. And, for the reasons stated in *Matamoros v. State*, 901 S.W.2d 470, 479 (Tex.Cr.App.1995) (Baird, J., concurring), I join only the judgment of the Court.