Opinion issued April 18, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00600-CR

_____

**GERALD MOUTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Case No. 1319187

## MEMORANDUM OPINION

A jury found appellant Gerald Mouton guilty of the felony offense of forgery.[1]  Appellant pleaded true to two felony enhancement allegations in the indictment.  In accordance with the habitual offender statute, the jury assessed appellant's punishment at 35 years in prison.[2]

In his sole issue, appellant contends that the trial court erred when it overruled his objection to a remark made by the State during closing argument in the punishment phase of trial.  We affirm.

## Background

It is undisputed that, on September 6, 2011, appellant went to Deerbrook Mall with seven counterfeit 100-dollar bills in his pocket.  Appellant first went to a mall kiosk and tendered a counterfeit 100 dollar bill to the clerk to pay for sunglasses.  Ultimately, appellant retrieved the fake note from the clerk and paid with smaller denominations.

Appellant then went to a vitamin store in the mall, where he attempted to pay for merchandise using one of the counterfeit 100-dollar bills. The manager at the store indicated to appellant that he could not accept the 100-dollar bill. Appellant quickly took the bill back and paid for the merchandise with 20-dollar

---

[1]　　*See* TEX. PENAL CODE ANN. § 32.21 (Vernon 2011).

[2]　　*See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2012).

bills. After appellant left the store, the manager called mall security to alert them that a person was in the mall attempting to use counterfeit money.

Security contacted the police, and an officer was dispatched to the mall. Appellant next went to a mall lingerie store, where he again tendered a counterfeit 100-dollar bill to the clerk to pay for merchandise. Recognizing that it was counterfeit, the clerk refused to accept the money. The police officer who had been dispatched detained appellant at the store. The officer discovered that appellant had seven counterfeit 100-dollar bills in his pocket. The clerk at the vitamin store identified appellant as the person who had earlier tendered the counterfeit money to him.

Appellant was charged with the felony offense of forgery by possessing counterfeit money with the intent to utter it. He pleaded not guilty, and the case was tried to a jury.

At trial, the State offered the testimony of the police officer who had detained appellant. The officer testified that the 100-dollar bills that he had recovered from appellant's pocket appeared to be counterfeit. The officer stated he had immediately noticed that all seven bills had the same serial number. The officer testified that appellant had told him that he did not know that the money was counterfeit. Appellant had claimed that he had gotten the 100-dollar bills from a man to whom he had sold some tire rims.

The manager from the vitamin store and the clerk from the lingerie store also testified. Each stated that appellant had tendered a 100-dollar bill to pay for merchandise. Each testified that it was obvious that the bill was counterfeit because it looked faded and too light in color.

Appellant also testified at trial. He stated that he had been released from prison only 18 days before his arrest at the mall. Appellant claimed that he had received the 100-dollar bills from an individual to whom he had sold vehicle tire rims. He explained that, during the 20 years he had been in prison, 100-dollar bills had changed in appearance, and he did not realize that the bills were counterfeit.

Appellant acknowledged that he had previously been convicted of sexual assault, two-offenses of felon in possession of a weapon, and a misdemeanor offense of evading arrest. He testified that he had been given a 10-year sentence for one of the offenses of felon in possession of a weapon but ultimately served 20 years in prison because he had been caught and convicted of possessing marijuana while incarcerated.

Appellant testified that he was planning to marry a woman who was pregnant with his child. Appellant stated that, while he was out on bond for the instant offense, he had been employed at an auto detailing shop. He claimed that he intended to provide for his fiancée and his child by working at the shop.

Appellant also admitted that his bond had been revoked in the instant case because he had tested positive for marijuana use while on bond. Appellant admitted that he smoked marijuana every day.

The jury found appellant guilty of forgery as charged. At the beginning of the punishment phase, appellant pleaded true to the two felony enhancement paragraphs in the indictment, which alleged that appellant had two prior felony convictions for the offenses of sexual assault and felon in possession of a weapon. Appellant also stipulated to evidence showing that, in addition to those felony offenses, he had been previously convicted of another felony offense of felon in possession of a weapon and of the misdemeanor offense of evading arrest.

Appellant's fiancée, R. Smith, testified at the punishment phase. She stated that she met appellant one-and-one-half weeks after he was released from prison. Smith's testimony indicated that she was pregnant with appellant's child. Smith testified that, while he was out on bond, appellant had been working. She stated that she believed appellant was a productive member of society.

During closing argument, defense counsel explained to the jurors that, because appellant had pleaded true to the enhancement allegations, the jury charge would instruct them to find the two enhancement paragraphs to be true. As a result, the punishment range for the forgery offense was elevated to 25 years to 99 years or life in prison. The defense asked the jury to assess the minimum

5

punishment of 25 years in prison. Defense counsel told the jury that, considering parole eligibility, appellant would serve at least 5 years in prison on a 25-year sentence. Defense counsel argued that he knew appellant could be a productive member of society. He also asked the jury for the minimum sentence to allow appellant to be a father to his child. The defense further asserted that the shortest sentence was adequate considering the crime that appellant had committed.

The State responded as follows during it closing:

> Now, this is usually the time when we're supposed to get up and just start hammering on a person and tell the jury exactly what you want, just hammer and say, "Give me 99 years." As the Defense counsel just said, the punishment should fit the crime.

> Well, the punishment range for the crime if you're a first-time offender is two to ten years. And that would be an appropriate sentence if the Defendant was a first-time offender. But he's not. We've heard the evidence here in the punishment phase. He's been convicted of three other felonies.

> Who is Gerald Mouton? Well, in 1986 we knew Mr. Mouton to be the Gerald Mouton that was a rapist. In 1990 we knew that Gerald Mouton received eight years for felon in possession of a weapon. So he's a person who after getting four years for a sexual assault gets out and is now carrying a gun or a weapon on him. He's the same Gerald Mouton who in 1991 was convicted again as a felon for being a felon in possession of another weapon. He's the same Gerald Mouton who told you from the stand that he did 20 years on a ten-year sentence. He's the same person while he's on bond is smoking dope because he does it every day.

> That's who Gerald Mouton is. A week and a half after he gets out of prison, he meets a young lady. Now he's on bond facing 25 to life and he's irresponsible enough to impregnate her—

6

At that point, the defense objected, stating, "Your Honor. I think that's totally improper argument. It's not against the law and I'd ask for a mistrial." The trial court overruled the objection.

The jury assessed appellant's punishment at 35 years in prison. This appeal followed. In one issue, appellant contends that the trial court erred when it overruled his objection to the State's argument as set out above.

## Jury Argument

### A. Standard of Review and Relevant Legal Principles

We review a trial court's ruling on an objection to jury argument under the abuse-of-discretion standard. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). Generally, there are four proper areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to an argument of opposing counsel, and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (citing *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008)). An argument that goes beyond the bounds of these permissible areas constitutes reversible error only if an analysis of the record, as a whole, shows the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

7

**B.     Analysis**

Appellant contends that the State's argument during the punishment phase stating that "he's on bond facing 25 to life and he's irresponsible enough to impregnate [his fiancée]" was improper argument, which harmed him.  We disagree.

The State's argument was permissible because it was an answer to the defense's request for leniency from the jury.  The defense offered evidence showing that appellant was about to become a father and was in a committed relationship with the baby's mother.  The defense elicited testimony that appellant had been employed since he was out on bond and portrayed him as someone who could be a "productive member of society."  In other words, the defense's strategy was to depict appellant as someone who had become a responsible family man who should be given the minimum sentence.  The complained-of remark was offered as part of the State's argument to counter the defense's plea for leniency by demonstrating that appellant had a lengthy history of irresponsible behavior, which had continued even after he was placed on bond for the instant offense.

Moreover, to the extent that it may be classified as an opinion, the prosecutor's remark was nonetheless permissible.  A prosecutor may argue personal opinions concerning issues in the case so long as the opinions are based on evidence in the record and do not constitute unsworn testimony.  *Wolfe v. State*,

917 S.W.2d 270, 281 (Tex. Crim. App. 1996); *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985).

Here, the remark was made based on the record, which showed that appellant's fiancée was pregnant, appellant had a lengthy criminal history, and he faced a minimum sentence of 25 years in prison for the instant offense. The remark was not based on unsworn testimony. Nor did it inject new facts that were not already before the jury. We hold that the trial court did not abuse its discretion when it overruled appellant's objection to the complained-of argument.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).