**Affirmed and Opinion Filed June 21, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00964-CR**

**BRANDON EDDARIUS WHITE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-81750-2020**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Breedlove

A jury found appellant Brandon Eddarius White guilty of aggravated robbery

and the trial court sentenced him to 20 years' imprisonment. In two issues, appellant

challenges the sufficiency of the evidence and complains that his counsel was

ineffective. We affirm the trial court's judgment in this memorandum opinion. *See*

TEX. R. APP. P. 47.4.

## Background

On March 4, 2020, complainant Kasi Kalahasti was on his way home from

work. He walked from a bus stop to his apartment complex at about 7:00 p.m. It was

dark; it had rained during the day and it was cloudy and cold. Kalahasti had his headphones in and was talking on his phone. As he was walking, a person pulled on the hood of his jacket and then struck him on the head with a handgun. Kalahasti fell to the ground, and when he looked up, he saw the gun pointed at his face. The man holding the gun took Kalahasti's backpack, handed it to another person, and then took Kalahasti's gold ring, cell phone, and wallet. The two men then fled from the scene, and Kalahasti did not see where they went. He testified that he thought the gun used to strike him was "black—or I'm not sure, actually." He described the men as wearing a blue hoodie and a red hoodie. Neither wore a mask.

Kalahasti went to his apartment and, using his roommate's phone, called 911. Dallas police officer Tony Black arrived shortly afterward. In Black's presence, Kalahasti used his roommate's computer to track activity on his stolen credit cards. Two of his stolen credit cards had been used at a specific QT gas station. There were subsequent transactions at a Wal-Mart store and a McDonald's inside the Wal-Mart. Black relayed this information to other officers who were working in the area.

At 7:45 or 8:00 p.m. the same evening, Dallas police officer Jason Born was called to a QT convenience store about a 30-minute drive from where Kalahasti's assault occurred. Born located a white Nissan that was suspected to be involved. While there, Born received information about Kalahasti's credit cards. Born observed two men exit from the vehicle, go inside the store, and then return to the

vehicle. One wore a black hoodie and black jeans, and the other, a gray hoodie and blue pants.

Born then followed the pair to a nearby Exxon station and then to a Wal-Mart. Born did not follow them inside the store because he was in plain clothes and working in a covert capacity as part of the Dallas Police Department's Crime Response Team (CRT). The men stayed in the store for about ten minutes, and Born received additional information about use of Kalahasti's credit cards there, including use at a McDonald's inside the Wal-Mart. Born observed the men making a purchase at a vending machine near the door.

Officer Justin Burt testified that he was working in uniform with the CRT on the night of the robbery. He and his team received information about potential suspects at the Wal-Mart, and proceeded to that location.

Burt testified that he observed the two men leave the Wal-Mart and return to the white vehicle. Officers then approached the men. Burt testified that with his gun drawn, he came up the passenger side of the car and opened the door to find appellant in the passenger seat. Officers arrested appellant as well as his companion. Burt could see the butt of a handgun protruding from under the front passenger seat of the vehicle. He retrieved the gun and unloaded it. He described it as a silver .38 caliber revolver with a brown handle. The gun was admitted into evidence at trial.

In the vehicle, police found Kalahasti's backpack, wallet, credit cards, and cell phone. Police also found merchandise purchased that evening at a nearby DTLR

–3–

store, including several pairs of Nike shoes, T-shirts, underwear, socks, and pairs of pants with the tags still on them. The State offered receipts into evidence showing that the purchases were made on the same evening with credit cards matching the last four digits of Kalahasti's missing cards. There was also a receipt for a purchase at McDonald's inside the Wal-Mart. The State also offered records from Kalahasti's bank accounts showing purchases at DTLR and McDonald's on the date of the offense.

But as appellant argues, he was not wearing a red or blue hoodie and neither was his companion, Dontarius Lollie. Instead, they were wearing black and grey. Neither had a gun in his possession. The firearm found under the passenger's seat of the white vehicle where appellant was sitting was silver with a brown handle, not black. The vehicle was not appellant's. Neither Kalahasti nor any other witness identified appellant.

After the State rested, the trial court denied appellant's motion for directed verdict. The jury found appellant guilty of aggravated robbery as charged in the indictment. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant contends the State failed to present legally sufficient evidence to support a conviction for aggravated robbery. He contends there is no evidence connecting him to any robbery of Kalahasti. He argues that there was no evidence showing that he used Kalahasti's credit cards, he did not match the

description of the individuals who assaulted Kalahasti, and he was not found with the weapon used to attack Kalahasti.

When we review the sufficiency of the evidence to support a conviction, we uphold the conviction if any rational trier of fact could have found all essential elements of the offense proved beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). In conducting our review, we consider the evidence in the light most favorable to the verdict. *Id.* The jury is the sole judge of the weight and credibility of the evidence, and it may choose to believe all, some, or none of the evidence presented. *Id.* Moreover, the jury may draw reasonable inferences from the evidence, and the evidence is sufficient to support a conviction if the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Id.* at 655–56. Circumstantial evidence is as probative as direct evidence in establishing an actor's guilt, and circumstantial evidence alone can be sufficient to establish guilt. *O'Reilly v. State*, 501 S.W.3d 722, 726 (Tex. App.—Dallas 2016, no pet.).

We measure the sufficiency of the evidence against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument. *Edward*, 635 S.W.3d at 656. Here, appellant was convicted of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03(a). A person commits aggravated robbery if he commits robbery and (1) causes serious bodily injury to

another or (2) uses or exhibits a deadly weapon. *Id.* A person commits robbery if, during the course of committing a theft and with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a)(2). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of property. *Id.* § 31.03(a).

The Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1) (emphasis added). Thus, proof of a completed theft is not required to establish a robbery. *See id.*; *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); *Jones v. State*, No. 05-18-00588-CR, 2019 WL 4071995, at *3 (Tex. App.—Dallas Aug. 29, 2019, pet. ref'd) (mem. op., not designated for publication).

The State contends that the jury could infer that appellant was one of the robbers based on his unexplained possession of items stolen from Kalahasti. Appellant was spotted by police approximately one hour after the robbery, followed, and apprehended thirty or forty minutes later. Kalahasti's possessions stolen during the robbery were found in the car in which appellant was apprehended. The car's back seat contained items recently purchased with Kalahasti's stolen credit cards. The jury may draw an inference of guilt when a defendant is found in unexplained possession of recently stolen property, although the inference is not conclusive. *See*

–6–

*Hardesty v. State*, 656 S.W.2d 73, 76–77 (Tex. Crim. App. 1983); *see also Louis v. State*, 159 S.W.3d 236, 248 (Tex. App.—Beaumont 2005, pet. ref'd) (jury could infer that appellant was one of gunmen who committed robbery when he was found a short time later with the stolen items in close proximity after attempting to hide from police). "Once the permissible inference arises, the sufficiency of the evidence must still be examined according to applicable direct or circumstantial evidence standards of appellate review since the inference is not conclusive." *Hardesty*, 656 S.W.2d at 77; *see also Barwari v. State*, No. 05-08-01325-CR, 2010 WL 338198, at *4–5 (Tex. App.—Dallas Feb. 1, 2010, pet. ref'd) (op. nunc pro tunc, not designated for publication) (discussing *Hardesty* and concluding that evidence of appellant's unexplained possession of stolen laptop computer with its identifying stickers peeled off and its operating system and software changed was legally sufficient to support finding of guilt).

The jury heard the conflicting evidence. Although Kalahasti's description of appellant's clothes and the gun did not match the evidence introduced at trial, the jury also heard evidence that it was dark at the time of the offense and Kalahasti testified that he was "in shock at that time." Kalahasti testified that he is not familiar with firearms because they are illegal in his home country. The jury also heard testimony that there was red wording on appellant's white T-shirt worn under the gray hoodie.

The jurors were the sole judges of the weight and credibility of the evidence and resolved any conflicts and inconsistencies. *See Edward*, 635 S.W.3d at 655. Considering the evidence in the light most favorable to the verdict, we conclude a rational jury could have found all essential elements of the offense beyond a reasonable doubt. *Id.* at 656. We decide appellant's first issue against him.

**Request to Obtain New Counsel**

In his second issue, appellant contends the trial court erred by denying his request to appoint new counsel to represent him. "Under the State and Federal Constitutions [a criminal defendant] is entitled to effective assistance of counsel," but he "is not entitled to appointed counsel of choice." *Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991). The defendant carries the burden of proving he is entitled to new counsel. *Cooper v. State*, No. 05-18-01246-CR, 2019 WL 6606364, at *3 (Tex. App.—Dallas Dec. 5, 2019, pet. ref'd) (mem. op., not designated for publication). Generally, conclusory allegations of conflicts of interest, disagreements on trial strategy, and personality conflicts are insufficient to satisfy the defendant's burden. *Loring v. State*, No. 05-18-00421-CR, 2019 WL 3282962, at *1 (Tex. App.—Dallas July 22, 2019, no pet.) (mem. op., not designated for publication).

An appellate court reviews a trial court's ruling on a motion to substitute counsel for an abuse of discretion. *Turner v. State*, No. 05-07-00616-CR, 2008 WL 2502143, at *2 (Tex. App.—Dallas June 23, 2008, no pet.) (not designated for

publication) (citing *Carroll v. State*, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

Appellant argues that he made his request weeks before trial when it became apparent "that his trial counsel was not exercising his best efforts to pursue a defense or explore favorable terms for a potential plea agreement." In a motion for continuance filed twelve days prior to the trial setting, appellant's counsel detailed his efforts "to obtain a plea offer to convey to the defendant." He also explained, "the defendant has indicated on a number of occasions that since I am court appointed that I will not fight for him in his case. Furthermore, he is unhappy with my representation and the plea offer." He stated, however, "I have been representing this defendant for the past two (2) years, and I have no objection to proceeding forward as his legal counsel."

At a pretrial hearing the following day, appellant asked the trial court to remove his attorney. He explained that he felt his attorney did not "have my best interest." The trial court denied the motion, explaining that a new lawyer would need time to prepare the case and would be unlikely to provide any better representation than appellant's current lawyer. Counsel explained that he and appellant had a good relationship for the past two years, but appellant was unsatisfied with the State's plea offers. Counsel discussed the efforts that had been made in previous negotiations

with the State, and the court explained to appellant that neither party was required to agree to a plea. The court noted it would revisit the issue if necessary.

"Trial courts are vested with broad discretion to control and manage their dockets in order to promote efficient and orderly administration of justice while protecting the statutory and constitutional rights of all persons coming before the court." *Thornton v. State*, No. 05-16-00565-CR, 2017 WL 1908629, at *4 (Tex. App.—Dallas May 9, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Taylor v. State*, 255 S.W.3d 399, 402 (Tex. App.—Texarkana 2008, pet. ref'd)). The trial court explained to appellant,

> With this case being set for trial as close as it is, I understand your concern, but, you know, that would result in even longer delays, would result in a new lawyer having to get on board. There's no reason to believe that that new lawyer would, in your eyes, be any better than Mr. Smith. I think sometimes lawyers say things that are hard to hear and maybe—but I know Mr. Smith to be a zealous advocate for his client. . . .
>
> [T]here's two parties to [a plea agreement]. There's the State and there's you, and if there is a plea, it's a result of a negotiation. That doesn't mean the State wants it or has to accept it. Doesn't mean you want it or have to accept it. Your lawyer's job is to merely try to get something you're happy with. Doesn't mean it's successful ever. And it just means that he has to transmit to you what the State offers, so— which you certainly have a right to accept it or reject it.

The court also heard that the State had reduced its initial offer by five years, and noted, "that's moving." The court explained to appellant that "this will get resolved one way or the other," "because you don't have to agree, they don't have

–10–

to agree, and we'll try a case and it will be a fair case and it will be a well-tried case because you've got a good lawyer."

Appellant also argues that "given the wholesale dearth of non-speculative evidence connecting Mr. White to Kalahasti's assault," his lawyer could and should have been more diligent in representing his interests. He did not bring this complaint to the trial court's attention, however, nor does he explain what counsel could or should have done differently. His argument also lacks any citation to the record or to authority, referencing only his previous argument about sufficiency of the evidence. Accordingly, his complaint that his counsel "should have been more diligent" presents nothing for our review. *Washington v. State*, No. 05-22-00712-CR, 2023 WL 3814044, at \*5 (Tex. App.—Dallas June 5, 2023, no pet. h.) (mem. op., not designated for publication) (citing *Lucio v. State*, 353 S.W.3d 873, 877–78 (Tex. Crim. App. 2011), for the proposition that appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities").

We conclude the trial court did not abuse its discretion by denying appellant's request for new counsel. *See Thornton*, 2017 WL 1908629, at \*4. We decide appellant's second issue against him.

## CONCLUSION

Appellant's conviction is affirmed.

/Maricela Breedlove/

MARICELA BREEDLOVE
JUSTICE

220964f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRANDON EDDARIUS WHITE,
Appellant

No. 05-22-00964-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-81750-
2020.
Opinion delivered by Justice
Breedlove. Justices Nowell and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 21st day of June, 2023.