

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00243-CR

———————————————————

WILLIAM THOMAS HENDERSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. DC78-CR2021-1172

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant William Thomas Henderson appeals his conviction for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a)(3)(B). He raises two issues on appeal: (1) the trial court's admission of a 911 call recording into evidence and (2) the sufficiency of the evidence to prove that the property he stole belonged to the complainant, Susan Parker. Because the challenged portions of the 911 call were cumulative of Parker's testimony, and because undisputed evidence shows that at least one of the items Henderson attempted to appropriate belonged to Parker, we will affirm.

## I. Background

The three primary individuals involved in the aggravated robbery—Henderson, his girlfriend Rochelle Convery, and Parker—were homeless, and two of them—Convery and Parker—used wheelchairs.

On the morning of the incident, Parker told the police that her purple duffle bag was missing, and she described the bag's appearance as well as some of its contents. She later testified that those contents included clothes and money. When the police found the duffle bag near where Henderson and Convery were sleeping, they returned it to Parker, but according to Parker, her clothes and money were missing. While it is undisputed that some of Henderson's and Convery's belongings

were in the duffle bag when it was returned to Parker,[1] it is also undisputed that the bag itself belonged to Parker.

Less than thirty minutes later, Henderson and Convery saw Parker with the duffle bag, and Henderson began to chase her, pushing Convery in her wheelchair as he did. After catching up with Parker, Henderson pepper-sprayed her and grabbed her duffle bag. Convery later testified that Henderson attempted to put the duffle bag on her wheelchair but that she "pushed it away and . . . told him, [']No, we don't steal,'" so he removed some of the bag's contents and left the duffle bag with Parker.[2]

There was conflicting evidence regarding what items were removed from the duffle bag during the pepper-spraying incident.[3] Parker testified that Henderson stole

---

[1]Although Parker admitted as much at one point in her testimony, at another point she testified that when the police retrieved the duffle bag for her, "it was empty."

[2]Parker testified that she considered Convery her "street daughter."

[3]Parker testified that Henderson stole a can of chips and a ketchup bottle from her duffle. But when she was later shown a photograph of the chips and ketchup confiscated by the police from Henderson and Convery after the pepper-spraying incident and asked how the items got in the duffle bag, Parker stated that "[t]hey [i.e., Henderson and Convery] had to have put them in there because [she] didn't."

Meanwhile, Convery testified that she saw Henderson remove their tent and steak knives from the bag but that she did not see any food items. Parker did not initially list the knives among the items that had been taken from her duffle bag, but when asked about them, she claimed that they belonged to her son.

Unfortunately, the law-enforcement testimony did not clarify the items taken from the bag either. One of the officers who responded to the incident referred to

the duffle bag as well as several food-related items that were in it, while Convery testified that the only items retrieved from the bag belonged to her and Henderson.

Whatever was removed from the bag, a resident of a nearby house heard Parker screaming and called 911. The recording of this 911 call was admitted over Henderson's objections. In it, the caller stated that he "just woke up" and "do[es]n't know what . . . [is] going on," but he relayed some of Parker's allegations to the 911 operator.[4] During the call, Parker could be heard in the background crying and screaming.[5]

Henderson was convicted of first-degree felony aggravated robbery for pepper-spraying Parker, a disabled person, in the course of committing theft. *See id.* § 29.03(a)(3)(B), (b). He was sentenced to 12 years' confinement. *See id.* § 12.32(a).

---

"three items that came out of the bag," but the officer did not specify what the items were.

[4]For example, the caller stated that "she's talking about she got pepper-sprayed, people took her money and clothes and sh**," and then he repeated that "ya, she says she just got pepper-sprayed[, and] she out here screamin[g].'" When the 911 operator asked where the incident had occurred, the caller asked Parker, and then he relayed to the operator that "she said it happened right in front of my house."

[5]In the recording, Parker's screams could be heard with sufficient clarity that the operator heard her saying her name, and the listener can hear her alleging that "William Henderson is the one who did this," despite the fact that the caller repeatedly states that he "really can't understand her [i.e., Parker]."

4

## II.  Discussion

Henderson raises two issues:  (1) the admission of the 911 call, and (2) the sufficiency of the evidence.

## A.  The 911 call's admission was harmless.

Henderson first argues that the trial court erred by admitting the 911 call recording into evidence because it contains the caller's inadmissible hearsay statements.[6]

### 1.  Standard of review

Even if a trial court erroneously admits evidence, the error will not result in reversal absent a showing of harm.  *Pinkston v. State*, Nos. 02-22-00076-CR, 02-22-00077-CR, 2023 WL 3017661, at \*4 (Tex. App.—Fort Worth Apr. 20, 2023, pet. ref'd) (mem. op., not designated for publication); *see* Tex. R. App. P. 44.2(b); *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023).  "And no harm occurs 'when a defendant fails to object at trial to cumulative evidence of the same fact . . . or when a defendant fails to challenge other, cumulative evidence of the same fact on appeal.'" *Pinkston*, 2023 WL 3017661, at \*4 (quoting *Mayo v. State*, No. 02-19-00404-CR, 2021 WL 2587065, at \*3 (Tex. App.—Fort Worth June 24, 2021, no pet.) (mem. op., not

---

[6]Portions of Henderson's brief also appear to challenge the call recording as more prejudicial than probative.  To the extent that he intends to raise this as a separate challenge to the 911 call's admission, and assuming without deciding that he adequately briefed it, *see* Tex. R. App. P. 38.1, such challenge would still require a showing of harm, and the challenged portions of the 911 call remain harmless.

designated for publication)); *see Cook*, 665 S.W.3d at 600 ("The erroneous admission of evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998))).

### 2. Cumulative 911 call

At trial, Henderson objected to the 911 call recording because the caller was "relating hearsay information" that was "not anything within his personal knowledge." But even assuming that the trial court erred by admitting the 911 caller's statements into evidence, the statements were cumulative of other, unchallenged evidence—specifically, Parker's trial testimony.

The 911 caller merely repeated Parker's allegations to the operator; he did not endorse Parker's statements as factually accurate, nor did he adopt them as his own. The caller stated, for example, that "she's talking about she got pepper-sprayed, people took her money and clothes and sh** but sh** I just woke up[;] I don't know what the f*** [is] going on."

The caller's recitation of Parker's allegations was substantially similar to Parker's testimony before the jury. She testified that Henderson had "grabbed the pepper spray and he doused [her] with it" and that "[h]e grabbed [her] . . . duffle bag that the police had given back to [her]." Parker further told the jury that, when the police had retrieved the duffle bag for her before the pepper-spraying incident, some of the items she had stored in the bag were missing—it had been "full of clothes" and

6

"[t]here [had been] money in the zipper," but the clothes and money were gone when the police returned the bag to her.

Because the challenged portions of the 911 call recording were cumulative of Parker's testimony, any "erroneous admission of [this] evidence[—which] is otherwise cumulative of other properly admitted evidence pertaining to the same facts[—wa]s harmless." *Living v. State*, No. 09-14-00247-CR, 2015 WL 3897871, at *5 (Tex. App.—Beaumont June 24, 2015, no pet.) (mem. op., not designated for publication) (holding 911 call cumulative of other evidence when complainant's testimony "outlined the details of the evening in a manner that was consistent with the details of the 9-1-1 recording"). We overrule Henderson's first issue.

## B. The evidence is sufficient.

In his second issue, Henderson asserts that the evidence is insufficient to show that the property he took from Parker belonged to her.

### 1. Standard of review and law

When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Edwards v. State*, 666 S.W.3d 571, 574–75 (Tex. Crim. App. 2023); *Wolfe v. State*, 917 S.W.2d 270, 274 (Tex. Crim. App. 1996). In this case, a legally sufficient showing of aggravated robbery requires the State to prove that, "in the course of committing theft . . . and with intent to

7

obtain or maintain control of the property, [Henderson] . . . intentionally, knowingly, or recklessly cause[d] bodily injury to [Parker]," and she was disabled.[7] Tex. Penal Code Ann. §§ 29.02(a)(1), .03(a)(3)(B). Theft, in turn, requires evidence that the defendant unlawfully appropriated property with the intent to deprive the owner of the property. *Id.* § 31.03(a).

But the commission of aggravated robbery does not require a completed theft. *See Bustamante v. State*, 106 S.W.3d 738, 740–41 (Tex. Crim. App. 2003) (rejecting sufficiency challenge to robbery underlying capital murder conviction and stating that, "[w]hile no completed theft occurred, proof of a completed theft is not required to establish the underlying offense of robbery"); *Wolfe*, 917 S.W.2d at 275 (similar); *Escobar v. State*, Nos. 2-08-352-CR, 2-09-185-CR, 2010 WL 1509689, at *2 (Tex. App.—Fort Worth Apr. 15, 2010, no pet.) (mem. op., not designated for publication) (similar, rejecting sufficiency challenge to aggravated robbery). Rather, the phrase "in the course of committing theft" is statutorily defined to "mean[] conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code Ann. §§ 29.01(1), .02(a).

---

[7]Because the sufficiency of the evidence is measured against the hypothetically correct jury charge, the elements recited above have been modified to reflect Henderson's indictment. *See Edwards*, 666 S.W.3d at 574–75.

8

## 2. Sufficient evidence

Henderson argues that Parker was not the owner of the property that he took. He focuses on the conflicting testimony regarding the items removed from the duffle bag, and he argues that there was insufficient evidence that any of the relevant items belonged to Parker. Were we to adopt Henderson's focus on the items removed from the duffle bag, his challenge would indeed present a close call.

We need not make this close call, though, because there was testimony from both Parker and Convery that Henderson attempted to appropriate the duffle bag itself, and it is undisputed that the bag belonged to Parker. Parker testified that, after Henderson pepper-sprayed her, "[h]e grabbed [her purple] duffle bag that the police had given back to [her] off the back of [her] wheelchair" and that "[she] couldn't fight him off." When asked about the items taken, she stated that "[her duffle] bag was taken" and that Henderson did not have permission to take it. Convery further testified that when Henderson pepper-sprayed Parker, "he took the duffle bag off of [Parker's] wheelchair and put it on [Convery's] wheelchair, and [she] pushed it away and . . . told him, [']No, we don't steal. . . . Don't put it on . . . my wheelchair.[']" It was only then—after Convery prevented Henderson from leaving the duffle bag on her wheelchair—that Henderson removed items from the duffle and left the bag with Parker.

A reasonable jury could thus have concluded that, when Henderson pepper-sprayed Parker, he was "in the course of committing theft" because his pepper--

spraying "occur[red] in an attempt to commit[ or] during the commission" of "unlawfully appropriat[ing the duffle bag] with intent to deprive the owner of [the] property." *See id.* §§ 29.01(1), 31.03(a).

We overrule Henderson's second issue.

### III. Conclusion

Having overruled both of Henderson's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 22, 2023